**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PRAIRIELAND, INC. | : | CASE NO. 302CV147(CFD) |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF MORRIS | : | |
| DEFENDANT | : | APRIL 14, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Pursuant to the Local Rules of Civil Procedure, Rule 7 (a), the Defendant, Town of Morris [hereinafter "Town"], hereby submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment.  For the reasons that follow, the Town submits that it is entitled to judgment as a matter of law on the Plaintiff's takings claim and claims of unreasonable drainage, nuisance, trespass, negligence and quiet title.

**II.    FACTS**

The Plaintiff, Prairieland, Inc., filed a Complaint, dated December 28, 2001, against the Defendant, Town of Morris, in Connecticut Superior Court.  The Town later moved to have the matter removed to federal court.  Upon having the matter removed, the Plaintiff filed an Amended Complaint, dated April 12, 2002, and a Second Amended Complaint, dated January 15, 2003.  In the Second Amended Complaint, the Plaintiff

alleges several causes of action against the Town including a claim under the Fifth

Amendment Takings Clause and claims for quiet title, unreasonable drainage under

General Statutes § 13a-138[1], nuisance, trespass and negligence.  The Plaintiff further

alleges that its action is brought under 42 U.S.C. § 1983.

   The Plaintiff's claims arise out of the following alleged facts.  The Plaintiff is a

corporation that acquired a 30-acre parcel of property located at 255 Bantam Lake

Road in Morris, Connecticut on September 30, 1985.[2]  Amended Complaint, ¶¶ 3-4.

Prior to the Plaintiff's ownership of 255 Bantam Lake Road, a previous owner, Mark

DePecol conveyed sewer easements to the Town.  Amended Complaint, ¶ 6.  A copy of

the easements were recorded on August 18, 1984 in Volume 44 at pages 188 and 189.

See Exhibit B, Quit Claim Deed, pg. 188; Exhibit C, Quit Claim Deed, pg, 189.

Subsequently, on September 21, 1984, the Town, through its agents and employees,

began installing a sewer line that ran across the Plaintiff's property.  The Plaintiff alleges

that the sewer line was installed outside of the easements, encroaching its property.

---

[1] General Statutes § 13a-138 provides: "(a) Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such way as to do the least damage to such land. (b) Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house, or into or upon yards and enclosures used exclusively for the storage and sale of goods and merchandise."  General Statutes § 13a-138.

[2] Although the Plaintiff alleges that it became the owner of the property on September 30, 1985, the land records for the Town of Morris show that the Plaintiff became the owner of the property through a quitclaim deed, which was signed on October 7, 1985, and recorded on October 9, 1985.  See Exhibit A, Quitclaim Deed, Volume 45, Page 694-95.

The construction of the sewer line was completed in 1986.  See Exhibit D, Affidavit of Michael Doyle; Exhibit E, Deposition of Michael Doyle, pg. 29.

In addition to the alleged improper placement of the easement, the Plaintiff claims that the Town deposited more than 2,500 cubic feet of spoils from the construction of the sewer line on its property.  Second Amended Complaint, ¶ 10.  Allegedly, the spoils contain inferior wetlands soils that have "commingled with road quality gravel previously deposited on the Property.  Wetlands soils are not permitted to be utilized for roadbed due to their physical make up and well-accepted engineering practices and, when combined with suitable road quality gravel, render the mixed soil unsuitable for use as roadbed material."  Second Amended Complaint, ¶ 11.  The Plaintiff further alleges that sometime thereafter the Town cut an opening in a culvert, causing the culvert to drain directly onto the property.  Second Amended Complaint, ¶ 12.  In addition to this drainage, the Plaintiff alleges that the Town modified a road that borders its property and that said modification caused more drainage onto the Plaintiff's property.  Second Amended Complaint, ¶ 14.

In response to the Second Amended Complaint, the Town filed an Answer and Special Defenses, in which it asserts that the Plaintiff's claims are barred by the statute of limitations; the Plaintiff has failed to state a claim upon which relief can be granted;

the doctrine of qualified immunity precludes the Plaintiff's recovery; and the doctrine of

governmental immunity, as codified in General Statutes § 52-557n[3], precludes the

Plaintiff's recovery.

### III.    STANDARD OF REVIEW

"Summary judgment is proper if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1985). "The moving party bears the initial burden of establishing that

no genuine issues of material fact exist and that the undisputed facts show that she is

entitled to judgment as a matter of law." Martin v. Rodriguez, 154 F. Sup. 2d 306, 311

(D.Conn. 2001). "In determining whether a genuine issue of material fact exists, a court

must resolve all ambiguities and draw all reasonable inferences against the moving

party." Id.

---

[3] General Statutes § 52-557n provides in relevant part: "(a)(1) . . . a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n.

Summary judgment is appropriate in cases where statute of limitations is raised as a defense.  See <u>West Haven School District v. Owens-Corning Fiberglass Corp.</u>, 721 F. Sup. 1547, 1556, n.10 (D.Conn. 1988).  "The question of when a cause of action accrues, so as to start a statute of limitation running, is ordinarily a question of fact for a trier; consequently, a court cannot grant summary judgment for a defendant if there is a genuine dispute as to when the limitation period began."  <u>Id.</u>

## IV.     THE TOWN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S 42 U.S.C. § 1983 CLAIM

### A.     Takings Claim

The Plaintiff alleges that the Town violated the Fifth Amendment[4] by taking property through the installation of the sewer line on parts of the property that are not subject to the easements that the Town was granted by Mark Depecol.  The Plaintiff therefore claims that this property that is outside of the easements was improperly taken by the Town without just compensation.  The Plaintiff also alleges that the Town has improperly effected a taking by causing drainage onto its property.

#### 1.     Ripeness

---

[4] The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

"Assuming again that the plaintiff was deprived of property, the Fifth Amendment provides that private property [shall not] be taken for public use, without just compensation.  U.S. Const. amend. V.  The Connecticut Supreme Court has held, however, that a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State."  Webster v. Moquin, 75 F.Supp.2d 315, 323 -24 (D.Conn. 2001).

"In *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set forth a two-pronged test for assessing the ripeness of takings-type claims. The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a 'final decision.' *Williamson,* at 185-186, 105 S.Ct. 3108. The second prong requires the plaintiff to have sought compensation if the state provides a reasonable, certain and adequate provision for obtaining compensation."  (Citations omitted; internal quotation marks omitted.)  Katz v. Stannard Beach Ass'n, 95 F.Supp.2d 90, 98 (D.Conn. 2000). The Second Circuit has held that "even in physical taking cases, the compensation must first be sought from the state if adequate procedures are available."  Villager Pond, Inc, v. Town of Darien, 56 F.3d 375, 380 (2d Cir. 1995) (quoting Sinaloa Lak Owners Ass'n

v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir 1986), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).).  "*Williamson* drew no distinction between physical and regulatory takings, and the rationale of the case, that a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State."  (Internal quotation marks omitted).  Id.

      The Plaintiff's takings claims, as pled, are not ripe for adjudication.  The Plaintiff fails to allege or demonstrate that it attempted to obtain just compensation through procedures provided by the State of Connecticut, that are incorporated in article first, § 11 of the Connecticut Constitution.  See Katz, supra, 95 F.Supp.2d at 98 ("Plaintiffs' takings claim fails under the second prong of *Williamson* as the Amended Complaint does not allege that Plaintiffs have already availed themselves of the 'legally sufficient [inverse condemnation] procedure, under article first, § 11, of the constitution of Connecticut, to obtain just compensation for the alleged taking of their property.'" Id.)

      Similarly, the Plaintiff fails to allege that procedures to obtain such compensation do not exist.  See Gavlak v. Town of Somers, 267 F.Supp.2d 214, 220 (D.Conn. 2003). In failing the two-prong test, the Town is entitled to judgment as a matter of law on said claims.

**2.    Statute of Limitations**

The Plaintiff's takings claims are barred by the statute of limitations.  42 U.S.C. § 1983 "does not contain a statute of limitations, [therefore] a federal court applies that period of limitations of the state in which the action is brought."  (Internal quotation marks omitted.)  Halpern v. Bristol Board of Education, 52 F.Supp.2d 324, 329 (D.Conn. 1999).  "In this District, [t]he appropriate borrowed state limitations period is provided by this state's three-year general tort statute, Conn.Gen.Stat. § 52-577."  (Internal quotation marks omitted.)  Id.  General Statutes § 52-577 provides in relevant part: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  General Statutes § 52-577.

"Although the applicable statute of limitations for the § 1983 count in this action is the 'borrowed' state statute, federal law governs as to when § 1983 claims accrue and when the period of limitations begins to run.  See Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994)."  Halpern, supra, 25 F.Supp.2d at 329.  The Second Circuit holds that "§ 1983 claims accrue when the conduct causes harm and the claimant knows or has reason to know of the conduct and the resulting harm.  Veal, 23 F.3d at 724."  Halpern, supra, 25 F.Supp.2d at 329.

With regard to the statute of limitations, the United States Supreme Court has stated that "the means of knowledge are the same thing in affect as knowledge itself." Wood v. Carpenter, 101 U.S. 135, 143, 11 Otto 135, 25 L.Ed. 807 (1879).  "A plaintiff that does not have actual knowledge of the injury may nevertheless trigger the running of the limitations period if the plaintiff 'should have known' of the injury."  Blue Cross of California v. Smithkline Beecham Clinical Laboratories, Inc., 108 F.Supp.2d 116,122 (D.Conn. 2000).

The Plaintiff claims that the Town violated 42 U.S.C. § 1983 by violating its Fifth and Fourteenth[5] Amendment rights.  The Plaintiff's takings claims are governed by the three year statute of limitations incorporated in General Statutes § 52-577.  See Monatuck Associates v. Wendt, United States District Court, District of Connecticut, No. CIV 395CV10006 (AHN) (*Nevas, J.* November 14, 1996) (§ 52-577 governs statute of limitations for takings claims brought under § 1983) (See Attached).  Under federal law, the takings claim accrued when the Plaintiff realized or should have realized that it had suffered harm.  In this instance, as the Plaintiff alleges, the Plaintiff became the owner of the property on September 30, 1985.  See Amended Complaint, ¶ 4.  The sewer line

---

[5] The Fourteenth Amendment provides in relevant part: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

was completed in 1986.  See Exhibit D, Affidavit of Michael Doyle; Exhibit E.  Moreover, Bruce Black, one of the principal owners of Prairieland, Inc., testified that he had visited the property at least fifty times prior to 2000.  See Exhibit F, Deposition of Bruce Black, pg. 29.  Therefore, the Plaintiff had notice or should have had notice of the alleged encroachment outside of the easements in 1986, when the construction was completed.  Thus, the statute of limitations period began to accrue in 1986.

Thus, if the statute of limitations period began to run in 1986, it finally ran out in 1989.  The Plaintiff did not bring this action until 2001, well after the statute of limitations period had run.  Therefore, the Plaintiff is barred by the statute of limitations from bringing the § 1983 takings claim.  Consequently, the Town is entitled to judgment as a matter of law on the Plaintiff's takings claims.

### 3.  Takings Claim Based On Installation Of The Sewer Line

Even if the court finds that the Plaintiff's takings claims are ripe, the Plaintiff cannot prevail on the claims because the Town has a right to the property through the theory of prescriptive easement.

General Statutes § 47-37 provides that "[n]o person may acquire a right-of-way or any other easement from, in, upon or over the land of another by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

General Statutes § 47-37.  "[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right." (Citations omitted; internal quotation marks omitted.)  <u>Galvin v. Gaffney</u>, 24 F.Supp.2d 223, 231 (D.Conn. 1998).  "[T]he character of the use, whether adverse or permissive, is to be determined as an inference from the circumstances of the parties and the nature and character of the use." <u>Id</u>.  "Use under a claim of right means without recognition of the rights of the owner of the servient tenement."  (Internal quotation marks omitted.)  <u>DiSorbo v. Grand Associates One Ltd. Partnership</u>, 8 Conn. App. 203, 205, 512 A.2d 940 (1986).

In this instance, the Plaintiff had notice that the Town had installed a sewer line on its property.  As Jay Black testified, he was a former principal owner of the Plaintiff Company and was a principal when the Plaintiff purchased the property.  See Exhibit G, Deposition of Jay Black, pgs. 16, 27.  Jay Black had knowledge of the sewer line prior to the Plaintiff's purchase of the property because he was consulted by the predecessor owner, Mark Depecol, as to the location of the sewer line.  See Exhibit H, Deposition of Jay Black, pgs. 32-39.  Furthermore, the manholes above the sewer line were installed on the ground level.  See Exhibit I, Deposition of Jay Black, pg. 52.  Therefore, the Plaintiff knew that the sewer line was installed on its property when it purchased said

11

property.  See <u>Klein v. De Rosa</u>, 137 Conn. 586, 590, 79 A.2d 773 (1951) (finding that existence of physical conditions was enough to put property owners on notice that the walk was being used by the plaintiff under a claim of right).

Additionally, as stated previously, the construction of the sewer line was completed in 1986.  Thus, the Town had been continuously using the property without the recognition of the Plaintiff's rights for fifteen years before the Plaintiff filed this lawsuit.

The Town has established all the requirements necessary to demonstrate that a prescriptive easement exists.  Therefore, the Town has a right to the property that the sewer line occupies.  The Plaintiff is precluded from prevailing on its takings claim and the Town is entitled to judgment as a matter of law on said claim.

### 4.    Takings Claim Based On Drainage

In addition to the takings claim regarding the property outside of the easement, the Plaintiff claims that the Town took its property without just compensation by allowing water and silt to drain onto its property.  Specifically, the Plaintiff alleges "the Town and or its agents or employees cut an opening in an existing culvert along a public highway adjoining the Property known as 'Little Road,' causing the culvert to drain directly onto the property."  Amended Complaint, ¶ 12.  The culvert was installed in 1954.  See

Exhibit D, Affidavit of Michael Doyle.  There are no records from the sewer installation project indicating that the culvert was broken during the project.  See Exhibit D, Affidavit of Michael Doyle.  Moreover, the Plaintiff makes no allegation as to when the culvert was broken, how it got broken, or who broke it.  There is nothing suggesting that the Town or its employees or agents caused the culvert to break.  The Town did not have notice of the broken culvert until 2001, when Jay Black filed a wetlands application for the property.  See Exhibit D, Affidavit of Michael Doyle.  Given the absence of a genuine issue of material fact demonstrating that the Town caused the culvert to break, the Town is entitled to judgment in its favor on the Plaintiff's takings claim.

**V.** **THE TOWN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S STATE LAW CLAIMS**

**A. The Plaintiff Fails to Demonstrate That The Town Caused The Unreasonable Drainage**

The Plaintiff alleges that the Town unreasonably drains water and debris onto its property, in violation of § 13a-138.  Section 13a-138 provides that a municipality may "make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and . . . it shall be done in such way as to do the least damage to such land."  General Statutes § 13a-138.

The plain language of the statute suggests that the Plaintiff must first be able to demonstrate that the Town caused water to drain on its property before it can prevail on a claim under § 13a-138.  Here, the Plaintiff has offered no facts, through deposition testimony or otherwise, indicating that the Town or its employees or agents broke the culvert thereby causing unreasonable drainage onto the property.  Given the absence of a genuine issue of material fact, the Town has put forth sufficient facts demonstrating that it did not cause the culvert to break. See Exhibit D, Affidavit of Michael Doyle.  The Town is entitled to judgment as a matter of law on the Plaintiff's claim for unreasonable drainage.

**B.**   **The Plaintiff Fails To Allege Or Demonstrate That The Essential Elements Of Nuisance Exist**

The Plaintiff claims that the Town has created a nuisance by allowing storm water and silt to discharge onto its property.  "It is well established that a town may be held liable for injury resulting from a nuisance created and maintained by it. *Marchitto v. West Haven,* 150 Conn. 432, 437, 190 A.2d 597 (1963). Actions against public authorities founded upon such nuisance fall into three general classes: (1) nuisances which result from the conduct of the public authority in violation of a statute; (2) nuisances which are intentional in the sense that the creator intended to bring about the conditions constituting a nuisance; and (3) nuisances having their origin in negligence,

that is, in the failure of the creator of the conditions to exercise due care." (Internal quotation marks omitted). <u>Dingwell v. Town of Litchfield</u>, 4 Conn. App. 621, 624, 496 A.2d 213 (1985).

"The first two categories are generally referred to as absolute nuisances . . . . An absolute nuisance is one grounded in conduct which is intentional, not negligent . . . . Intentional, in this context, means, not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance." (Citations omitted; internal quotation marks omitted). <u>Id.</u>

"A nuisance has been described as a condition, the natural tendency of which is to create danger and inflict injury upon person or property." <u>Id.</u> "This court has stated often that a plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted). <u>Pestey v. Cushman</u>, 259 Conn. 345, 355, 788 A.2d 496 (2002).

In the Fourth Count, the Plaintiff does not allege that the Town acted in violation of a statute or that it acted intentionally in creating the alleged nuisance. Therefore, the

claimed nuisance action falls into the third category, where a condition was created by the Town's failure to exercise due care. The Plaintiff fails to allege facts demonstrating that the drainage had a natural tendency to create danger and inflict injury on the property. Similarly, the Plaintiff fails to allege that the danger created by the drainage was a continuous danger. Absent such allegations, the Plaintiff's claims are insufficient as a matter of law and the Town is entitled to judgment in its favor on the Plaintiff's claim of nuisance.

**C.  The Plaintiff Cannot Prevail On Its Claim Of Trespass Because the Town Is Immune From Such A Claim**

The Plaintiff alleges a cause of action sounding in trespass against the Town. The Plaintiff's claim arises out of the allegation that the Town placed water and silt on its property. "The essential elements of an action for trespass are: (1) ownership or a possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." Abington Ltd. Partnership v. Talcott Mountain Science Center for Student Involvement, Inc., 43 Conn. Sup. 424, 427, 657 A.2d 732 (1994). "Thus, in order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." (Internal quotation marks omitted.) Id. at 427-28.

The Plaintiff fails to allege that the Town acted intentionally when it supposedly allowed water and silt to drain onto the property.  There are no allegations demonstrating that the Town intentionally caused the culvert to be cut or that the Town intentionally caused drainage to run onto the property.  Therefore, the Plaintiff cannot prevail against the Town on its claim of trespass.

Furthermore, the Plaintiff is barred by the doctrine of governmental immunity from bringing such an action for trespass against the Town.  General Statutes § 52-557n codifies the doctrine of governmental immunity and abrogates governmental liability for negligent acts of the municipal employee or agent.  "[T]he general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity."  Williams v. New Haven, 243 Conn. 763, 766-67, 707 A.2d 1251 (1998).  "The legislature . . . set forth general principles of municipal liability and immunity in General Statutes § 52-557n."  Id. at 767.  "[A] town generally is immune from liability for its tortious actions other than as allowed by the legislature.  Here the legislature has imposed liability on a town for the negligent acts and omissions of its employees and officials but not where the allegations involve intentional acts by the town's employees."  Sammartino v. Turn, Superior Court,

judicial district of Tolland, Docket No. CV 99 070151 (*Scholl, J.* February 28, 2003) (See Attached).

As stated previously, in order for the Plaintiff to prevail on its claim of trespass, the Plaintiff must prove that the Town, acting through its employees, intentionally caused the trespass.  Therefore, since trespass is an intentional tort, the Town is immune from such a claim under § 52-557n.  See <u>Benson v. Town of Redding</u>, Superior Court, judicial district of Danbury, Docket No. CV 02 0344668 (*White, J.* February 4, 2003) (doctrine of governmental immunity shields town from claim of trespass) (See Attached).  As such, the Town is entitled to judgment as a matter of law on the Plaintiff's claim of trespass.

### D.  <u>The Negligence Claim Is Barred By The Statute Of Limitations And The Town Is Protected By Qualified Immunity</u>

The Plaintiff claims that the Town is negligent in allowing drainage to collect on its property; failing to install the sewer line within the easement; and failing to properly regrade and restore the property.  "General Statutes [§ ] 52-584 is the statute of limitations applicable in an action to recover damages for injury to the person or property caused by negligence, reckless or wanton misconduct or malpractice." <u>Naardi v. AA Electronic Security Engineering, Inc.,</u> 32 Conn. App. 205, 210, 628 A.2d 991 (1993).  As stated previously, § 52-584 provides a two year statute of limitations period,

that begins to run when the plaintiff discovered or should have discovered the injury. See Slekis, supra, 56 F.Supp.2d at 206.

Here, the Plaintiff is barred by the statute of limitations from bringing these negligence claims. The sewer line was completed in 1986. Therefore, the Plaintiff had notice or should have reasonably had notice that the sewer line was installed outside of the easement in 1986. The statute of limitations period began in 1986 and ran in 1988. Since the statute of limitations period has already run, the Town is entitled to judgment as a matter of law on the Plaintiff's claims of negligence.

Alternatively, if the court does not find that the statute of limitations period has run for the negligence claim, the Plaintiff is still barred from such a claim because the Town is immune from negligence claims. "[I]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function." (Internal quotation marks omitted.) Wysocki v. City of Derby, 140 Conn. 173, 175, 98 A.2d 659 (1953). "At common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts." Ryszkiewicz v. City of New Britain, 193 Conn. 589, 593, 479 A.2d 793 (1984). "Liability for the negligent performance of a purely public governmental duty may occur only when a statute so provides." Wysocki, supra, 140 Conn. at 175. "Thus the general rule

developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Williams v. City of New Haven, 243 Conn. 763, 766-67, 707 A.2d 1251 (1998). In Williams, our Supreme Court held that a plaintiff cannot prevail where it has failed to rely on or cite to a statute that abrogates governmental immunity. See id. at 769. Similarly, a plaintiff cannot prevail on a claim of negligence where it fails "to name an agent, officer or employee of the municipality and to invoke indemnification pursuant to § 7-465". Id.

The Plaintiff fails to allege that the Town is statutorily liable for the damage to its property. As such, the Town is immune from the Plaintiff's negligence action. Additionally, the Plaintiff fails to name an individual municipal employee in its Amended Complaint. Absent such an allegation, the Plaintiff cannot prevail against the Town on a claim for common law negligence or indemnification. The Plaintiff's failure to specify a statute or name an individual in the Complaint, entitles the Town to judgment in its favor on the Plaintiff's claim of negligence.

### E.    The Town Is Entitled to Judgment In Its Favor On The Claim Of Quiet Title

The Plaintiff brings an action for quiet title against the Town, alleging that it is the absolute owner of the property subject to the easement conveyed to the Town. General Statutes § 47-31 provides in relevant part: "(a) An action may be brought by any person

claiming title to, or an interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it . . . or to have any interest in the property, on any lien or encumbrance on it, adverse to the plaintiff . . . for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle title to the property."  General Statutes § 47-31 (a).

Subsection d provides that "[e]ach defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived."  General Statutes § 47-31 (d).

The Town has rights to the land that the sewer line occupies through the doctrines of prescriptive easement and adverse possession.  As stated previously, the Town has rights to the property that the sewer line occupies because it has a prescriptive easement.  See Section IV A 3 infra.

Additionally, the Town has rights to the property through the doctrine of adverse possession.  "The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept

out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right." (Internal quotation marks omitted.)  <u>Schulz v. Syvertsen</u>, 219 Conn. 81, 92 n. 8, 591 A.2d 804 (1991).

        As Curtiss Smith avers there is only one manhole outside of the permanent easement.  See Exhibit J, Affidavit of Curtiss Smith.  Therefore, the manhole and the sewer line  had been in place for at least fifteen (15) years before the Plaintiff brought this action to stop the Town's occupation.  The Plaintiff claims that it did not consent to allowing the Town to remain on its property, outside of the permanent easement, once the temporary easement ended.  As the manholes are above ground, the sewer line's placement outside of the permanent easement was open and visible.  See Exhibit I, Deposition of Jay Black.   Moreover, the Town had exclusive control over the property that the manhole occupied.  The Town, therefore, meets all the necessary requirements of adverse possession.  Absent a genuine issue of material fact that indicates that the Town did not adversely possess this property, the Town is entitled to judgment on the Plaintiff's action for quiet title.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, the Defendant, Town of Morris, submits that the court

should grant its Motion for Summary Judgment.

THE DEFENDANT,
TOWN OF MORRIS

By:_____
    JOSEPHINE A. SPINELLA
    Silvester & Daly
    72 Russ Street
    Hartford, CT 06103
    Tel. (860) 278-2650
    Federal Bar No. CT24009

## CERTIFICATION

I, Josephine A. Spinella, attorney for the Defendant, hereby certifies that a copy of the foregoing has been mailed, postage prepaid, in the United States Mail, this 14th day of April, 2004 to:

Kenneth R. Slater, Jr., Esq.
Halloran & Sage, LLP
225 Asylum Avenue
Hartford, CT 06103

By:_____
    JOSEPHINE A. SPINELLA
    Silvester & Daly

nai-prairieland/memo.msj.final