UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PRAIRIELAND, INC.,                      :      CASE NO. 302CV147(CFD)
         Plaintiff               :
                                 :
VS.                                     :
                                 :
TOWN OF MORRIS,                         :
         Defendant               :      JUNE 14, 2004

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.**    **OVERVIEW**

The plaintiff, Prairieland, Inc., hereby submits its memorandum and supporting affidavits in opposition to the Motion for Summary Judgment filed by the defendant, Town of Morris in accordance with Rule 56 of the Federal Rules of Civil Procedure and Rule 7 of the Local Rules of Civil Procedure.

**II.**    **COUNTERSTATEMENT OF FACTS**

The plaintiff, Prairieland, Inc., ("Prairieland") is a Connecticut corporation that owns the 30 +/- parcel of land in Morris, Connecticut at issue in this case (the "Property"). Affidavit of Jay Black ("Black Affidavit") ¶ 6. It acquired the subject property during 1985. *Id.* at ¶ 8. The Property is wooded and undeveloped. *Id.* Prairieland acquired title to the Property subject to an easement in favor of the Town of Morris granted by its predecessor in title, Mark Depecol, during 1984. *Id.* at ¶ 9. The easement granted the right to the Town of Morris to install and maintain a sanitary sewer line within an area on the eastern section of the Property and running roughly

ORAL ARGUMENT REQUESTED

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

parallel to the easterly boundary of the Property. ¶ 9 and ¶ 10. The area of the Property subject to the rights in favor of the Town is shown on a map dated April 1984 by William A. Berglund and entitled "Sanitary Sewer Easements to be Conveyed to the Town of Morris, Sheet 6 of 12 Job No. 1155 revised to 7/27/84 and sheet 7 of 12 bearing the same title.[1] *Id*. The easement requires the Town to restore the Property following construction or maintenance of the sewer easement. *Id*. at ¶ 11.

The Town of Morris or its agents constructed a sanitary sewer line across the eastern section of the Property. ¶ 14. During 1987, the Town provided Prairieland with an as-built survey purporting to show the actual location of the sewer line as it was constructed by the Town. *Id*. The as-built survey depicted the sanitary sewer line as being located within the easement area granted to the Town by Mark Depecol. *Id*. During 2000 and 2001, Prairieland engaged its land surveyor and civil engineer, Jay Black, a former principal shareholder and officer of Prairieland, to conduct surveying and engineering necessary to prepare plans for the development of the Property. ¶ 4 and ¶ 16. While surveying the site, Mr. Black discovered that the significant portions of the sewer line were located outside of the sanitary sewer easement area granted by Depecol. ¶ 16. After first discovering the location of the sewer line outside of the easement area when performing surveying related to prospective development at the site, Mr. Black informed the Morris Sewer Commission at its meeting during January 2001 of the Town's mistake. ¶ 18.

---

[1] The easement map associated with the easement was presented to Depecol prior to his grant of the easement and reviewed by Jay Black in his capacity as surveyor and engineer for Depecol. ¶10.

-2-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

When evaluating the site for development during 2001, Black discovered additional damage to the Property caused by the Town or its agents. ¶ 19. He discovered that water from the municipal stormwater system was being diverted onto the Property. *Id.* The Property is bounded on the south by a municipal highway known as Little Road. Little Road begins just at the southwest corner of the Property and extends in an easterly direction until it intersects with state highway 209, generally known as Bantam Lake Road. Catchbasins were constructed along Little Road to collect the stormwater drainage and are connected by pipes that direct the stormwater towards Bantam Lake Road. *Id.*

During April of 2001, Black discovered that a metal stormwater pipe designed to transport stormwater from the culvert on Little Road to the stormwater system on Bantam Lake Road was intentional cut with a saw to cause the stormwater to spill directly onto the Property. *Id.* Black also discovered that trenches were dug in the northerly shoulder of the highway in the vicinity of the cut pipe to discharge stormwater onto the Property that would have otherwise flowed along the highway towards the culverts near the intersection of Little Road and Bantam Lake Road directly onto the Property. *Id.* Finally, Black discovered that trees and brush in the vicinity of the cut pipe were cut down to enable a machine, such as a backhoe, to enter the Property and dig a pond to collect the stormwater diverted onto the Property from the municipal stormwater system. *Id.*

Black later reviewed records of the Town and found that a manhole in the sanitary sewer line located between the intersection of Bantam Lake Road and Little Road and the location of the unauthorized stormwater diversion on the Property was

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

chronically flooded. ¶ 20. The stormwater diversion was obviously undertaken by the Town as an alternative to the more costly repair of the failing stormwater system on Little Road. *Id.*

Prairieland's attorney corresponded with the Town of Morris on May 31, 2001 and July 10, 2001 regarding the damages discovered at the Property. ¶ 21. When the Town took no action regarding Prairieland's discovery, Prairieland commenced civil action in December 2001, approximately one year after it first discovered the location of the sewer line and less than one year after discovering the improper drainage.

During 2002, Prairieland discovered that the Town or its agents failed to properly restore the Property following the construction of the sewer line by depositing approximately 2500 cubic yards of wetlands soils on upland portions of the Property. ¶ 22. Following in its initial discovery regarding the sanitary sewer location and improper road damage, Prairieland proceeded with its plans to develop the Property and presented a subdivision plan to the Morris Planning and Zoning Commission acting as a planning commission pursuant to Chapter 126 of the Connecticut General Statutes. ¶ 23. Although the subdivision plan proposed no filling or other direct impact on the wetlands on the easterly section of the Property, an application to the Morris Conservation Commission, acting as the municipal inland wetlands and watercourses agency pursuant to the Connecticut Inland Wetlands and Watercourses Act, Connecticut General Statutes § 22a-36 *et seq,* was filed because the stormwater system for the development was located within an upland area regulated by that commission. *Id.* During the review of the wetlands application, a consultant for the Town discovered approximately 2500 cubic yards of fill that was placed in piles on the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

central portion of the Property west of the sanitary sewer line. The Morris Inland Wetlands and Conservation Commission demanded that fill deposited on the property west of the sanitary sewer line be evaluated. *Id.* Prairieland discovered that the fill, comprising 200 to 250 truck loads, contained significant wetland soils. *Id.*

It is apparent that the fill deposits were placed on the upland portions of the property by the Town or its agents after the wetland soils were excavated on the Property to make way for the sanitary sewer line installed in the wetland portions of the Property. ¶ 23. Neither Prairieland nor its predecessor undertook development activities on the wetland portion of the site. ¶ 22.

Since its purchase of the Property in 1985, representatives of Prairieland occasionally visited the site for the purposes of conducting survey work and engineering to evaluate the site and prepare for potential development of the Property. Neither Prairieland nor its principles and agents had any reason to know, based on its mere ownership of the Property or occasional visits to the site, that the damage alleged in its complaint had occurred until the damage was actually discovered during 2000, 2001 and 2002. ¶ 24; *see also* Bruce Black Affidavit.

With respect to the sanitary sewer line construction, visual inspection of manholes visible in the general vicinity of the easement area would not reveal the portions of the line were actually construction outside of the easement area. ¶ 15. The Town did not place monuments or other markers to delineate the easement area on the Property. *Id.* It was not until detailed survey work was undertaken in 2000 to prepare a subdivision plan for the Property that Prairieland obtained actual knowledge of the improper location of the line. ¶ 16. Furthermore, Prairieland reasonably relied on the

-5-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

as-built survey provided by the Town of Morris that erroneously certified that the line was located entirely within the easement area. ¶ 15.

Prairieland also had no reason to know that the Town had diverted stormwater onto the Property or placed wetland soils on interior portions of Prairieland property until those facts were actually discovered during 2001 and 2002, respectively. ¶ 24. The Property is wooded and undeveloped. ¶ 6. An occasional visit to the Property would not necessarily result in the discovery of the improper stormwater diversion or the unauthorized placement of fill on the upland portions of the Property. ¶ 24; Bruce Black Affidavit. ¶¶ 7-9.

After the Town failed or refused to take action with respect to these discoveries, Prairieland commence a civil action in December of 2001. The complaint was subsequently amended on two occasions, including amendments after the matter was removed by the defendant to this Court.

## III.  **STANDARD OF REVIEW**

Summary judgment is properly granted if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(c). While the moving party is not required to negate the cause of action or defense set forth, the moving party must demonstrate the absence of an essential element of the non-moving party's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986). When identifying which facts are material to establishing the essential element being challenged, the Court should consider if the fact would legitimately affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Court must decide whether there is sufficient evidence to sustain a verdict for the non-moving party. *Id.* at 249. In this regard, the Court must review the evidence in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences against the moving party, assessing its sufficiency according to the evidentiary burdens imposed by the controlling substantive law. *Id.* at 255.

### IV.    GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO THE PLAINTIFF'S FEDERAL CLAIM

a.    The Plaintiffs Taking Claim Should Not be Dismissed Pursuant to *Williamson County Regional Planning Comm'n v. Hamilton Bank.* 473 U.S. 172 (1985)

The plaintiff commenced this action in the state court alleging, inter alia, that the it was denied just compensation for a taking of real property in violation of Article 1 § 11 of the Connecticut Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. The defendant, having removed the action to the federal court, now claims that the constitutional claim giving rise to jurisdiction of this Court should be dismissed based upon the Supreme Court's ruling of *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172. The motion should be denied because: 1) the defendant is entitled to judgment on the State takings claim on statute of limitations grounds which renders state action final and the federal remedy ripe under *Williamson*; and, 2) consideration by the Court of the state taking remedy before proceeding to reaching the federal claim is in accord with *Williamson* and should preclude dismissal of the latter claim.

In *Williamson*, the owner of a tract of land sued a Tennessee regional planning commission alleging that the commission's application of various zoning laws and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

regulations to the plaintiff's property amounted to an unconstitutional taking under the Fifth Amendment. *Id.*, 473 U.S. at 175. The Court held that plaintiff's claim was not ripe for federal court review because the plaintiff had not pursued compensation through state inverse condemnation procedures. *Id.* at 186. "Because the Fifth Amendment proscribes takings without just compensation, a takings claim is not ripe until the property owner has sought compensation through the procedures that the state provides." *Williamson, supra* at 194, 105 S.Ct. 3108. The Court ruled that the state action denying just compensation is not "complete" until the state denies just compensation in the state proceeding.

  b. <u>State Action is Complete Because the Applicable Statute of Limitation is Based on Occurrence Rather Than Reasonable Discovery</u>

As noted by the defendant, Connecticut General Statutes § 52-577[2] is the statute of limitations applied to inverse condemnation proceedings. *See, Lestrange v. Town of Oxford, et. al.*, 21 Conn. L. Rptr. 14 (Corradino, J., Super. Ct. 11/4/97). However, unlike federal common law that applies a discovery test for the accrual of that statute Conn. Gen. Stat. 52-577 is an "occurrence" statute of limitation that accrues regardless of knowledge of the wrongful act or injury. *Collum v. Chapin*, 40 Conn. App. 449 (1996). Although the plaintiff had no knowledge and no reason to suspect that the sanitary sewer line was construction outside of its proper boundary, those acts took place more than three years prior to the commencement of action during 2001. Accordingly, no state constitutional remedy exists for the plaintiff. State action on the

---

[2] That statute provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

remedy alleged in the complaint is, therefore, final and the federal takings claim is ripe under *Williamson*.[3]

### c. Even if the Court rules that the Statute of Limitation has not Run, the Ripeness Requirement of Williamson is Satisfied if the Court Considers the State Remedy Before the Federal Remedy

Here, unlike *Williamson*, the plaintiff expressly seeks the state remedy under the state law constitutional provisions along with the alternative remedy under Federal Constitutional principles. In so doing, the plaintiff avoids a second judicial proceeding in which the very same witnesses and evidence would be presented and enables the Court to adhere to the principles of *Williamson* without unnecessarily requiring an entirely new action to the same Court if no state remedy is granted.

There is no reported Second Circuit or District of Connecticut authority that addresses the question of whether a party alleging unlawful taking without just compensation can seek alternative state and federal remedies in a single judicial proceeding when the both remedies involve the same procedure and evidence and when applicable rules of civil procedure would enable the court to consider whether a state law remedy exists before proceeding to determine the federal question. Although that specific issue raised in this case has not been addressed by our circuit, the Second Circuit has recognized the difficulties posed by *Williamson* and has departed from other circuits in holding that the doctrine of *res judicata* will not apply to a federal takings claim when a party is forced to litigate a takings claim in state court. *Santini v. Connecticut Hazardous Waste Management Service*, 342 F.3d 118, 127-130 (2nd Cir. 2003). In a decision subsequently criticized on other grounds, the United States Court of Appeals

---

[3] The plaintiff will, with the permission of the Court, reallege that Court to assert that no adequate remedy exists for the taking unless state law.

- 9 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

for the Fifth Circuit declared, without substantial analysis, that the two-prong requirements set forth in *Williamson* could not be satisfied by simultaneously bringing federal and state takings claims. *Samaad v. City of Dallas*, 940 F.2d 925 (1991). The Court in that case did not expressly consider the applicability of the *Williamson* doctrine to a judicial proceeding where the evidence in both claims would be identical and where existing rules of procedure would enable consideration of the state law claim before proceeding with the federal claim.

The plaintiff in this case seeks to exhaust the state procedural remedy prior to the Court's consideration of the federal takings remedy. This can be easily accomplished under the federal rules in accordance with the principles espoused in *Williamson* while avoiding the draconian remedy of dismissal which will necessitate the needless duplicate action in the event that the court rules that state law provides no remedy. A court has the power to exercise pendent jurisdiction over plaintiff's state claims together with his federal claims if they derive from "a common nucleus of operative fact," and commonly will exercise it if "considerations of judicial economy, convenience and fairness to litigants" weigh in favor of hearing the claims at the same time. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726,(1966). The court generally has the authority to establish the order in which claims are adjudicated. *Promisel v. First American Artificial Flowers*, Inc., 943 F.2d 251, 254 (2nd Cir.1991). In *Promisel*, the plaintiff brought action against his employer under both state and federal antidiscrimination statutes. Id. at 251. The Second Circuit Court held that the plaintiff's state law claim under New York Executive Law § 296, "clearly derives from the same nucleus of operative fact as his federal ADEA claim" and accordingly, the *Promisel* court

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was not precluded from adjudicating state claims prior to issues of federal question. Id. at 254.  See also, IUE *AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1059 (2nd Cir. 1993); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 291 (2nd Cir. 2003)(Court noted, in dicta, that the state law claims could have been adjudicated prior to federal claims).

The principles of ripeness are not supported by dismissing the federal claim in this case. The basic rationale underlying the doctrine of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *In re Drexel Burnham Lambert Group, Inc.*, 995 F.2d 1138, 1146 (2nd Cir. 1993), quoting, *Abbott Lab v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).  The ripeness doctrine prevents premature adjudication of issues that may never arise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dept. of Environmental Conservation*, 79 F.3d 1298 (2nd Cir. 1996).  See, also, *Auerbach v. Board of Educ. of the Harborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104 (2nd Cir. 1998) (holding that the ripeness doctrine is intended to avoid judgment of issues that may never come to fruition.)

There is no doubt that the general dispute regarding the taking of the plaintiff's property without just compensation is ripe.  The only question of ripeness pertains to whether the alleged taking can be adequately remedied under state law.  If so, the Court need not proceed to the question of federal takings jurisprudence.  If not, the state failure to compensate will be complete and the court can proceed to consider the facts under federal law. [4]  That procedure fully adheres to the principles of *Williamson* and

---

[4] Depending on the specifics of the Court's ruling, it is possible that adverse ruling on the state takings case will be *res judicata* with respect to the federal claim because the plaintiff initially commenced suit in state court and cannot avail itself of the court's ruling in *Santini*, *supra*.  The court would have jurisdiction, however, to decide both.

- 11 -

One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103

HALLORAN  
& SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

avoids the possible waste of resources of the parties and the Court if an entirely new civil action is required if the Court rules that state law provides an inadequate remedy to the plaintiff. Summary judgment on the federal takings claim should be denied.

### d. Genuine Issues of Material Fact Exist Regarding the Accrual of the Statute of Limitations

The defendant argues that the plaintiff's takings are barred by the three year statute of limitations set forth in Conn. Gen. Stat. § 52-577, the borrowed state limitations period applied to takings actions brought under 42 U.S.C. § 1983. Although § 52-577 is an occurrence statute, meaning that the cause of action accrues from the date of the act or omission complained of, the accrual of claims brought under § 1983 is governed by the federal law standard which is based the date when claimant knows or has reason to know of the conduct and the resulting harm. *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).

The date a plaintiff has actually discovered a given injury is a question of fact. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 712 (2004)(applying New York law). "The question of the time by which the plaintiff had constructive knowledge of the injury, *i.e.*, the time by which [the plaintiff] could with reasonable diligence have discovered the injury is ordinarily a mixed question of law and fact." *Id.* (Internal citations omitted.)

Federal courts analyzing the issue of discovery of damage to real property for the purposes of determining when a cause of action has accrued have been reluctant to impute knowledge of harm to a landowner, particularly at the summary judgment stage. In *Loughlin v. United States*, 230 F.Supp.2d 26, 39-40 (D.D.C. 2002), the district court reviewed cases brought under the Federal Tort Claims Act, and emphasized that "the statute of limitations begins to run on the first date that the injured party possesses

– 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." (quoting *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985))  Thus, mere suspicion of contamination to property was found to be insufficient to impute knowledge in *Loughlin*, and further noted that assurances made by the federal government to the landowners that the property was not, in fact, contaminated provided further evidence of disputes over material facts precluding summary judgment. *Id.* at 43.

Thus, the federal standard in applying the discovery rule indicates that, absent exceptionally strong evidence presented by the party moving for summary judgment on statute of limitations grounds that the plaintiff was confronted with facts which would cause a reasonable person to investigate further, the knowledge of a cause of action will not be imputed lightly.  Indeed, the instant case, which involves a misrepresentation by the defendant that no encroachment had actually occurred is analogous to the misrepresentations made by the federal government in *Loughlin* which factored in the district court's finding that the cause of action had not accrued prior to the plaintiff's obtaining actual knowledge of the contamination. *Loughlin*, 230 F. Supp. 2d. @ 43.

The defendant does dispute that the plaintiff did not actually discover the injury caused by the encroachment of the underground sewer outside the boundaries of the easement until the plaintiff commissioned a professional survey of the property for development purposes in 2000.  Thus, the defendant's only claim is that the plaintiff should have been aware of the encroachment outside of the easements by virtue of the passing of fifteen years and the fact that Bruce Black visited the property many times prior to 2000.  The defendant has fallen well short of demonstrating the absence of any

- 13 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

genuine issue of material fact as to whether the plaintiff should have been aware of the precise location of the underground sewer prior to actual discovery in 2001. Cases interpreting the statute of limitations set forth in Conn. Gen. Stat. § 52-577c(b) provides an analogous context to the instant dispute. That statute provides, in relevant part:

> [N]o action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.

In *Armotek Industries, Inc. v. Freedman*, 790 F.Supp. 383, 393 (D. Conn. 1992), the district court analyzed the phrase "exercise of reasonable care" and interpreted it to rely heavily on the plaintiff's "knowledge of facts which would put a reasonable person on notice" that it had been injured. Thus, evidence of the fact that the plaintiff in that case had sent a letter to the party requesting indemnification for the harm it had suffered to the property's prior owner in 1985 constituted sufficient evidence to show that, with the exercise of reasonable care, the plaintiff should have determined the causal connection between the contamination of the property and the responsible defendant within three years from the date of that letter. *Id.* at 393-394.

In *Blackburn v. Miller-Stevenson Chemical Co.*, 1998 WL 661445 (Conn. Super. Ct., Sept. 11, 1998)(Leheny, J.), the court noted that the term "reasonable care" is not defined in the statute, and proceeded to analyze the term as requiring reasonable diligence to be exerted by the purchaser of the property in inquiring as to the contamination of the property at the time of acquisition. Similarly, in *Visconti v. Pepper Partners Ltd. P'ship*, 2002 WL 1293224, at *7 (Conn. Super. Ct., May 14, 2002)(McWeeny, J.) the court held that where the purchaser of property had knowledge

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that the property had been used in the past as a service station or as a car repair body shop facility and that he was aware that contaminated soil had been removed from the property, reasonable care would have required a site investigation prior to purchase in order to assess the environmental condition of the property, thus the statute of limitations began to run at the time of purchase when he bypassed the opportunity to conduct such an investigation.

Here, no such clear knowledge of facts leading the plaintiff to suspect that its property had been harmed is present as in the above-described cases. Indeed, the fact that the plaintiff received as-built surveys, which clearly indicated, erroneously, that the underground sewer was within the boundaries of the easement strongly supports the contention that any person in the plaintiff's situation acting with the exercise of reasonable care would not have uncovered the harm. To impute knowledge of such harm to the plaintiff in this situation in the absence of evidence of any knowledge of facts on the plaintiff's part, which would lead it to suspect that the underground sewer had encroached outside of the boundaries of the easement, would place an undue burden on an innocent property owner.

As is discussed more fully in Section IV(E), *supra*, in the context of determining whether to impute knowledge of underground sewers or pipes as adverse possession to a property owner, absent strong above-ground physical evidence, the courts will generally not find that reasonable diligence requires property owners to make such an extensive investigation as would be required to discover such use. *See Exley v. Gallavin*, 96 Conn. 676 (1921).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105