UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PRAIRIELAND, INC., | : | CASE NO. 302CV147(CFD) |
| Plaintiff | : | |
| VS. | : | |
| TOWN OF MORRIS, | : | |
| Defendant | : | JUNE 14, 2004 |

## AFFIDAVIT

I, Jay Black, being duly sworn, depose and say:

1. That I am more than eighteen (18) years of age and believe in the obligation of an oath.

2. I am a licensed land surveyor and have been so licensed in the State of Connecticut at all times since 1970.

3. I am a licensed civil engineer and have been so licensed in the State of Connecticut since 1966.

4. I was an officer and principal shareholder of the plaintiff corporation, Prairieland, Inc. ("Prairieland"), from 1985 until 1994.

5. I have not held any ownership interest in Prairieland or served as an officer, director, or employee of Prairieland from 1994 to the present.

6. I am personally familiar with 255 Bantam Lake Road, the property at issue in this civil action (the "Property"). It is an undeveloped wooded and brushy 30+/- acre parcel of land located in Morris Connecticut and bounded on the south by a municipal highway known as Little Road.

7.  I currently serve Prairieland as a licensed surveyor and engineer and have served it in that capacity from 2000 to the present regarding its efforts to evaluate and prepare the Property for development.

8.  Prairieland acquired 255 Bantam Lake Road (the "Property") during 1985.

9.  Prairieland took title to the Property subject to an easement granted to the Town of Morris by Prairieland's predecessor in title, Mark Depecol on August 18, 1984. The easement authorized the Town of Morris to construct and maintain a sanitary sewer system within the boundaries shown on the easement map incorporated by reference into the easement.

10.  I served as a surveyor and engineer for Mark Depecol and, at his request, reviewed the proposed easement maps prior to his agreement to grant the easement in 1984. The maps presented to Mr. Depecol and reviewed by me are dated April 1984 by William A. Berglund and entitled "Sanitary Sewer Easements to be conveyed to the Town of Morris by Mark A. Depecol, et al," sheet 7 of 12, job 1155, and sheet 6 of 12 bearing the same title and including a revision dated 7/27/84 and attached as exhibit A hereto.

11.  The deed granting the easement requires the Town to restore the Property following any installation or maintenance of the sanitary sewer system.

12.  Prairieland did not grant any easements or enter into any other agreement authorizing the Town of Morris to construct a sanitary sewer system outside of the area previously granted by the Depecol easement.

13.  An "as-built survey" is a plan showing the actual location of improvements to real property.

14.  During 1987, following the construction of the sewer line on the Property, I was provided an "as-built" survey by the Town of Morris purporting to show the location of the sewer line as it was actually constructed. The as-built survey showed that the sewer line was constructed within the easement area granted to the Town by Depecol.

15.  I had no reason to question the accuracy of the as-built survey and did not have any reason to believe, based on visual observation of the Property including the sanitary sewer manholes visible at the surface of the Property, that the sewer line was constructed on portions of the Property not subject to any agreement in favor of the

Town of Morris by Prairieland or its predecessors in title. The Town did not place monuments or other markings to delineate the boundary or the easement areas.

16.  I first became aware of the fact that the as-built survey misrepresents the location of the constructed sanitary sewer line when I conducted a field survey of the Property during the fall and winter of 2000. Manholes visible on the surface were located between 10 and 30 feet from the location authorized by the easement. I immediately informed Prairieland that portions of the sanitary sewer line were located outside of the easement area.

17.  Prairieland did not grant any easements or enter into any other agreement authorizing the Town of Morris to construct a sanitary sewer system outside of the easement area pursuant to the easement previously granted by Depecol.

18.  I informed the Sewer Authority of the Town of Morris regarding the improper location of the sanitary sewer line at its January 2001 meeting.

19.  During April of 2001, I discovered additional damage caused to the Property. The Property is bounded to the south by a municipal highway known as Little Road which begin at the southwest corner of the Property and extends easterly to its intersection with state highway 209 known as Bantam Lake Road. The Little Road infrastructure includes a municipal stormwater system which includes catch basins that are connected by subsurface pipe that transfer stormwater collected from the highway in an easterly direction towards Bantam Lake Road (State Highway 209). During April of 2001, I discovered that a metal pipe from catchbasins in the Little Road drainage system was deliberately cut by a metal saw so that water would drain from the municipal system directly onto the Property. In addition, I discovered that trenches were dug to direct stormwater onto the Property that would otherwise drain along the northerly shoulder of Little Road towards Bantam Lake Road. I also discovered trees on the Property were cut to make way for a machine such as a backhoe to dig a pond to hold the stormwater directed from the municipal system onto the Property.

20.  After discovering the unauthorized diversion of significant stormwater onto the Property, I reviewed records of the Town of Morris and found documented evidence that a manhole in the sanitary system located down gradient of the unauthorized stormwater diversion had been experiencing flooding. Flooding of the system would increase flows in the line which delivers wastewater to a publicly owned treatment works owned and operated by the Town of Litchfield. The Town of Morris is obligated by contract to compensate the Town of Litchfield based on the volume of wastewater entering the system from the Town of Morris. Rather than undertake the potentially more costly repair to the defective stormwater system along Little Road, employees or

agents of the Town of Morris obviously diverted the stormwater onto the Property. No person other than the Town of Morris would be benefited by the stormwater diversion.

21. In correspondence dated May 31, 2001 and July 10, 2001, Prairieland, through its attorney, informed the Town of Morris of the damage to Prairieland's Property regarding the construction of the sewer line outside of the town's sewer easement and damage caused by road drainage from Little Road.

22. As part of Prairieland's efforts to develop the Property, it commissioned a soil scientist to identify wetlands and watercourses on the site who determine that much of easterly portion of the Property containing the sanitary sewer system is comprised of wetlands soils as defined by the Connecticut Inland Wetlands and Watercourses Act, Conn. Gen. Stat. § 22a-36, *et seq.* Prairieland proposed a subdivision application to establish single-family building lots on the western portion of the Property. During review of that application, the consultant retained by the Town discovered piles of fill located on undeveloped upland portions of the site and demanded that the piles of fill and be fully surveyed and studied. Investigation of the 2500 cubic yards, approximately 200 to 250 truck loads, of fill deposited on upland portions of the Property west of the sanitary sewer line revealed that fill included significant amounts of wetlands soils that must have been deposited by employees or agents of the town of Morris when the sanitary sewer line was constructed within the wetlands on the Property. No site development has ever occurred on the wetlands portion of the Property other than the construction of the sanitary sewer line.

23. Until the fill material was discovered and fully analyzed during 2002, Prairieland had no reason to expect that the fill was deposited on central portions of the Property or that the fill contained wetlands soil that had been improperly placed there by the Town of Morris or its agents when it constructed the sanitary sewer line. The Town of Morris was obligated to restore the Property following construction. Wetland soils cannot be used as road fill material for the subdivision road to be constructed at the site and greatly impede the ability to develop the site.

24. Based on my extensive experience as a civil engineer in Connecticut, prior to its actual discovery of the damage asserted in this civil action, Prairieland had

25.  no reason to believe that such damage had occurred and no reason to investigate whether such damage occurred.

_____
Jay Black

Subscribed and sworn to before me this 14th day of June, 2004.

_____
Kenneth R. Slater, Jr.
Commissioner of the Superior Court

559972_1.DOC