Not Reported in A.2d
(Cite as: 2002 WL 1293224 (Conn.Super.))

All defendants are entitled to summary judgment on the breach of contract claim.

### Statutes of Limitation

Counts seven and eight assert claims of negligent misrepresentation and negligence; count nine asserts a claim of negligence per se pursuant to General Statutes § 22a-427; count ten claims liability under General Statutes § 22a-452, seeking reimbursement; and count eleven claims liability under General Statutes § 22a-16. The environmental claims alleged in counts nine, ten and eleven are controlled by General Statutes § 52-577c, which statute of limitation mandates that such actions "shall be brought within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered." The plaintiffs assert that they did not discover the environmental contamination until within the two-year period when they were notified by the DEP. The issue is whether the plaintiffs, in the exercise of reasonable care, should have discovered the environmental condition at the time of the sale in 1996.

There are no Appellate or Supreme Court decisions defining reasonable care under General Statutes § 52-577(c). In *Blackburn v. Miller-Stevenson Chemical Co.*, Superior Court, judicial district of Danbury, No. 314089 (Sept. 11, 1998, Leheny, J.), the court applied General Statutes § 52-577(c) and rejected the plaintiff's claim that the statute did not begin to run until she had actual notice of the contamination. Relying on related statutes (General Statutes § 22a-452d(B)iv and CERCLA, the Comprehensive and Environmental Response Compensation Liability Act of 1980, 42 U.S.C. § 96 - 01 et seq.), the court concluded that the term "reasonable care" includes making reasonable inquiry at the time of the acquisition. The court considered the knowledge or experience of the purchaser, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or the likely presence of the contamination of the property, and the ability to detect such contamination by appropriate inspection. Also see *U.S. v. Pacific Hide & Fur Depot, Inc.*, 716 F.Sup. 1341, 1347 (D.Idaho 1989).

In the instant case, Visconti knew that the property had been used as a service station or as a car repair body shop facility. He knew that gas pumps and underground petroleum storage tanks had been removed from the property, along with contaminated soil. He believed that the property around the tanks was probably contaminated. He was specifically afforded the opportunity under his sales contract to do a Phase I environmental investigation, and was offered an extension of the contract time for performance to conduct such an investigation. Visconti also was required to report the sale as a transfer of an establishment pursuant to General Statutes § 22a-134. The exercise of reasonable care would certainly have required a site investigation, which would have revealed the environmental condition of the property. The statute of limitations began to run in 1996.

*8 The claim in count eleven under General Statutes § 22a-16 seeks equitable and declaratory relief from the defendants' negligent conduct in causing contamination on the property. It is uncontroverted that the property was vacant since 1989. The three-year period of limitation under General Statutes § 52-577 would apply. This is generally understood as an "occurrence statute," running from the date of the act or omission complained of. *Collum v. Chapin*, 40 Conn.App. 449, 451, 671 A.2d 1329 (1996). The property was owned by the plaintiffs from the date of the closing on February 9, 1996, more than three years from the date of the filing of the complaint on March 1, 1999.

Similarly, the negligence claims contained in counts seven and eight are untimely.

### CONCLUSION

For the foregoing reasons, summary judgment enters for all defendants on all counts.

2002 WL 1293224 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in A.2d
(Cite as: 1995 WL 806925 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

**IKE'S AUTO BODY,** INC.
v.
Brian E. **MARTIN** et al.

**No. CV 950068506.**

Dec. 22, 1995.

MEMORANDUM OF DECISION

PICKETT.

*1 The plaintiff, Ike's Auto Body, Inc. brought this action against the defendants, Brian E. Martin and Harold Jasch seeking an injunction, money damages, attorneys fees and costs. Subsequently, Marie A. Kearns, Daniel Whitford, Thomas J. Kearns and Judith A. Jasch were joined as defendants and an amended complaint was filed seeking a judgment determining the rights of the parties in certain land located in the Town of Goshen described as follows: That certain piece or parcel of land with all buildings standing thereon, situated in the Town of Goshen, County of Litchfield and State of Connecticut, and more particularly bounded and described as follows, to wit: Beginning at an iron post in the north line of Whitford road, said iron post being the southeast corner of parcel herein conveyed; thence, N. 825 feet to a point; thence west along a line parallel to said Whitford Road, 208 feet to a point; thence S. 825 feet more or less along a fence to a point in the North line of Whitford Road; thence E. along North line of Whitford Road 150 feet to a road leading to a junk yard; thence crossing road leading to the junk yard and from the East boundary of said road 58 feet along north line of Whitford Road to

the iron post, being the point and place of beginning.

The defendants Martin and Jasch filed a counterclaim seeking the establishment of the boundary line of the plaintiff's property and the quieting of title.

The plaintiff claims to have acquired title to its premises by virtue of a warranty deed from Patsy Marco Leoni and Harold T. Jasch, Jr. dated June 3, 1965, recorded in Goshen Land Records, volume 40, page 529.

The plaintiff in this action is a Connecticut corporation engaged in the salvage business which has a business location at 225 North Goshen Road, Goshen, Connecticut. Leoni and Jasch had owned the property since November 5, 1962 at which time they acquired it from Waldo E. Martin, Jr. and Marie W. Martin by deed recorded in Goshen Land Records, volume 40, page 435. The Martins had acquired the property by deed from Gail Whitford, dated April 1, 1958, recorded in Goshen Land Records, volume 40, page 234, and it was the Martins who commenced to operate the facility as a junk yard. Therefore, as of the time that the plaintiff acquired the premises known now as Ike's Auto Body, Inc., it had been used as an auto salvage yard for over seven years, having been previously known as Goshen Auto Parts.

At the time that the plaintiff's president, Francis Kaczmarczyk, was shown the property by Jasch and Leoni, he walked the boundary lines with them prior to purchasing the same. The premises were already owned as an auto salvage yard and operated as such, and the plaintiff's president, Francis Kaczmarczyk was shown the boundary lines as described in the survey of Robert W. Sterling, specifically including the westerly line along a stonewall and barbed wire fence as shown on the Sterling and Martin surveys.

Jasch and Leoni, in connection with their licensing of the facility by the Department of Motor Vehicles, in the sketch that accompanied their application had shown the westerly line as being a stonewall approximately one mile easterly of route 63 and the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1995 WL 806925 (Conn.Super.))

deeds into Jasch and Leoni and the deed into the Martins had described the westerly line as running "along a fence," referring to a barbed wire fence running in the same line as the wall along the westerly line as shown on both the Sterling and Martin maps.

**\*2** At the time that the plaintiff acquired the premises in 1965, the northerly and easterly lines as shown on the Sterling map were occupied by junked vehicles, vehicle parts, etc., but were not fenced.
Shortly after Kaczmarczyk's acquisition of the property in 1965, Kaczmarczyk began to move junked cars out of the northwesterly corner of the property which was occupied by trees and abandoned vehicles.

In 1972, a complaint was received by the Department of Motor Vehicles from David Whitford concerning the lack of fencing around the plaintiff's facility as a result of which after a hearing held on November 27, 1973, a fence was erected by the plaintiff around the then occupied portion of this premises which was a board fence completely surrounding the junked cars as they then sat on the plaintiff's premises. The plaintiff did not attempt at the time of that fencing to enclose the property which had been described to him and the property which he felt he owned by deed.

From 1965 to the present, the plaintiff has used and occupied under conditions consistent with adverse possession the entire premises shown on the Sterling map for all uses incident to the operation of a salvage yard.

In 1991 in an effort to comply with Department of Motor Vehicle regulations, the plaintiff retained the services of William Berglund and Robert Sterling to survey the property so that he could erect a fence around the boundary lines thereof. The initial Berglund survey was generated, which showed the westerly line in the same location as is presently indicated in both the Sterling and earlier Martin map.

In September 1994, pursuant to the requirements of the Department of Motor Vehicles, the plaintiff was in the process of erecting a fence along its westerly line so as to comply with DMV regulations. On September 11, 1994, the defendant Brian Martin, using a bucket loader tore down approximately 300 feet of fencing which had been erected by the

plaintiff at a cost of approximately $2,500. No communication was received by the plaintiff from Martin or anyone on his behalf complaining about the location of the fence before this act of vandalism occurred.

The plaintiff, nevertheless, in order to comply with the fencing requirement of the DMV in the spring of 1995 had Robert Sterling prepare a survey map of the property to show the deed line on the west and the lines of occupation on the north and east, which map which would be filed both with the Town of Goshen and with the DMV so that fence construction could be recommenced along the westerly line. This survey was completed in the spring of 1995 and fence construction was again started by the plaintiff along the westerly line shown on the resubmitted Sterling map. On June 25, 1995, the defendant Harold Jasch, tore down the survey markers erected along the westerly line as surveyed and marked by the plaintiff's surveyor and erected a fence and no trespassing signs in the vicinity of the fence construction, thus interfering with and stopping the plaintiff's construction activities. No communication was received by the plaintiff from Jasch or anyone on his behalf complaining about the location of the plaintiff's surveyed line before this act of vandalism occurred.

I

**\*3** The premises were charged out of the Whitford estate on April 1, 1958, and remained in the Whitford family until the conveyance to the plaintiff. All of the defendants in this action are Whitford heirs or are married to Whitford heirs, and the property was conveyed out of the Whitford estate to the Martins and then later Harold Jasch, whose wife, the defendant Judith Jasch, is a Whitford heir. Accordingly, the descriptions in the deed, the utilization of the property in question, and the representations made to the plaintiff at the time of its purchase on June 3, 1965 are all related to premises that had been "in the family" prior to the plaintiff acquiring title. Whatever ambiguities were created in connection with the description in the original deed and subsequent deeds, finally acquired by the plaintiff as being conveyed by the defendants were therefore of their own making and cannot be charged against the plaintiff in this action. *D'Addanio v. D'Addanio,* 26 Conn.App. 795 (1992) ; *Sweeney v. Landers, Frary and Clark,* 80 Conn. 575, 579 (1908).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Specifically, the deed into the defendant Harold Jasch, Jr., dated November 5, 1962, recorded in Goshen Land Records, volume 40, page 435, and the deed into Jasch's predecessors, the Martins, dated April 1, 1958, recorded in Goshen Land Records, volume 40, page 234 both describe the westerly line as running "along a fence." This description of the westerly line containing a fixed monument would prevail over any distances contained in the deed. *Frank Towers Corporation v. Laviana,* 140 Conn. 45, 50 (1953).

The premises as utilized by the defendant Harold Jasch, Jr. prior to his conveyance to the plaintiff in 1965, were presented by Jasch to the plaintiff's president and the Motor Vehicle Department as being bounded westerly by a stonewall. Francis Kaczmarczyk testified that at the time of the purchase by the plaintiff that the sellers, Jasch and Leoni, walked the boundary lines with Kaczmarczyk including the westerly line, and walked the line along the stonewall and barbed wire fence which was along the same line as the stonewall, which was the same stonewall shown in Jasch's submissions to the Department of Motor Vehicles for his junk dealer's license. These explanations of the location of the line indicate where the boundary line in the plaintiff's deed (Goshen Land Records, volume 40, page 529) on the west in fact was intended. *LaVoie v. Marshall,* 141 Conn. 681, 686 (1954).

Finally, the defendant Brian Martin, who prepared a survey map of the premises in question along the westerly line showing the boundary line along the fence and wall in exactly the same location as that shown on the Sterling map can be construed as an admission by the defendants that the location of the line by deed is in fact exactly where Martin shows it to be, which is in exactly the same location as is shown on the Sterling map.

For the foregoing reasons, the court finds that with respect to the westerly line, the plaintiff owns the premises up to the stonewall and ancient barbed wire fence line by deed.

II

*4 The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of possession and kept out uninterruptedly for a period of 15 years by

an open, visible, and exclusive possession by the claimant without the license or consent of the owner and under a claim of right. *Wadsworth Realty Co. v. Sunberg,* 165 Conn. 457; Conn. Gen.Stat. § 52-575. Adverse possession by successive owners may be tacked on to create the 15-year prescriptive period. *Smith v. Chapin,* 31 Conn. 530 (1863). Incidental presence on premises claimed by adverse possession without such presence being for purposes of claiming title will not preclude a finding of adverse possession. *Lucas v. Crofoot,* 95 Conn. 619 (1921). The claimant's possession need not be absolutely exclusive if it is the type of possession which would characterize an owner's use. *Roche v. Fairfield,* 186 Conn. 490, 502 (1982). Adverse possession must be made up by clear and positive proof. *Schulz v. Syvertsen,* 219 Conn. 81 (1991). The requirement that an adverse possession be "notorious" means that the use of the claimant constitutes something that is commonly known; well known. *Robinson v. Meyers,* 156 Conn. 510 (1968).

If there is anything in the law that would serve as a text book example as to what is "notorious," "open," and "adverse" within the meaning of the above cases, it is a junk yard with hundreds of scrapped autos, auto parts, and related materials enclosed by a fence which the persons against adverse possession are attempting to extinguish. Indeed the activities of the defendants in this action have been focused on the plaintiff's facility virtually since it was purchased. The complaint to the Motor Vehicle Department in 1973 with reference to the fencing of the plaintiff's premises was from one of the defendants. Cars have been essentially in the location presently occupied by the plaintiff's facility for almost 40 years. There have been no changes in the plaintiff's northerly or easterly boundary for almost 40 years. The use of the premises northerly and easterly boundary has been known to and in fact participated in by some of the defendants for almost 40 years. The previous owners of the junk yard facility itself were or are related to the defendants in this case. Accordingly, there is clear evidence of adverse possession with reference to the northerly and easterly lines of the subject premises.

Further, no survey was done at the time of the plaintiff's acquisition of the property in question and presumably prior thereto. The plaintiff's president was in fact shown the boundaries by the seller,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1995 WL 806925 (Conn.Super.))

Jasch and Leoni, who walked the boundaries with Kaczmarczyk. Except for the northeasterly corner, which was less cluttered with salvaged vehicles than the remaining portions of the plaintiff's property, the entire premises deeded to the plaintiff were occupied by salvaged vehicles, vehicle parts, etc. It was obvious to all in the vicinity where the boundaries were. Further, when in 1973, the defendants were dissatisfied with the state of the fencing of the plaintiff's property, they filed a complaint with the Department of Motor Vehicles, pursuant to which the plaintiff reerected his fencing around the salvaged vehicles, fencing the north and easterly boundary. There is no claim by the defendants to any use whatsoever of any of the premises in question inconsistent with the plaintiff's claim of adverse possession. Accordingly, the plaintiff's claim of title to the premises in question by adverse possession is found in its favor.

III

*5 The plaintiff claims that the defendant Brian Martin is liable to it for damages for an intentional trespass to their real estate which occurred on September 11, 1994 at which time Martin travelled onto the plaintiff's premises with a backhoe and ripped down 300 feet of fencing causing approximately $2,500.00 worth of damages to the plaintiff.

One is subject to liability to another for trespass to real property irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally enters land in the possession of the other or causes a thing or third person to do so, and remains on the land or fails to remove from the land a thing he has a duty to remove. 75 Am.Jur.2d 29, Trespass § 27.

In order to maintain an action for trespass and injunctive relief, the plaintiffs must establish that they have title to the premises in question and are in possession thereof. *McCullough v. Waterfront Park Association, Inc.,* 32 Conn.App. 746, 749 (1993).

The court finds that the plaintiff is in possession of and is the owner of the real estate in question and that Brian Martin went on the land on September 11, 1994, and tore down the plaintiff's fence. The defendant Martin is liable to the plaintiff for such damages found to have been proven in the amount of $3,500.00. The intention required to make the

actor liable for trespass is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. 75 Am.Jur.2d 30, Trespass § 29.

IV

The court awards exemplary damages against the defendant Martin which are measured by the plaintiff's attorneys fees less taxable costs. In Connecticut a plaintiff may recover exemplary damages where the pleadings allege and the evidence shows wanton or willful malicious misconduct, i.e. conduct inflicted intentionally without just cause or excuse. *Markey v. Santangelo,* 195 Conn. 76, 77 (1985). If the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights, an actual intention to do harm to the plaintiff is not necessary. *Berry v. Loiseau,* 223 Conn. 786, 811 (1992). The measure of damages where exemplary damages are awarded by the court are the litigation expenses less taxable costs. *Berry v. Loiseau, supra,* 825-27.

In this case, during 1994 and 1995, the plaintiff was in the process of attempting to comply with the rules and regulations of various regulatory bodies including the DEP, the Torrington Area Health District, the Department of Motor Vehicles, and the Town of Goshen. One of the requirements being imposed upon the plaintiff in this connection was the erection of a fence around its facility. Indeed, it had been at the insistence of the defendants in this matter that the plaintiff had been contacted by various authorities to erect a fence around its premises. The plaintiff attempted to procure the services of a surveyor, survey its line and commence the erection of a fence both in the fall of 1994 and the spring of 1995. The defendants Martin never attempted to contact the plaintiff regarding the location of the line, never attempted to retain counsel or otherwise raise the issue of the location of the westerly line in an orderly way, but resorted to vandalism and self-help measures to destroy the fence that the plaintiff was in the process of erecting. This conduct amounts to reckless, malicious and willful actions by the defendant which entitle the plaintiff in this action to exemplary and punitive damages in the amount of $1,000.00.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1995 WL 806925 (Conn.Super.))

V

**\*6** The court finds that with respect to the westerly line based on both the Sterling and Martin surveys, the plaintiff owns by deed the property up to the stonewall shown on both surveys, which is also the line of an old wire fence, and which line has been recognized by the parties and their predecessors in title since 1958. The court finds that pursuant to the language of the deed and specifically the monument set forth therein, i.e. the fence and stonewall, that the plaintiff owns up to that line by deed. With reference to the northerly and easterly lines, the property in question has been occupied by the plaintiff and its predecessors in title since approximately 1958 in one of the most notorious type uses known to man, i.e., junked vehicles, scrap metal, and related materials. The use and occupation of the land by the plaintiff is open, adverse and notorious. Judgment may enter in favor of the plaintiff on the counterclaim.

Finally, the vandalism and wanton destruction committed by the defendant Martin gives rise to an award of damages against him for trespass and an award of damages against them for exemplary damages measured by the plaintiff's cost of litigation less taxable costs in the amount of $1,000.00. The decree enters pursuant to Section 47-31 of the Connecticut General Statutes quieting and settling title on the plaintiff to the property described on the Sterling survey and an injunction enters against all defendant from entering upon said premises or directly or indirectly interfering with the plaintiff's use thereof, subject to penalty in accordance with the law.

Judgment may enter accordingly together with costs.

1995 WL 806925 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                 Page 1
(Cite as: 2003 WL 462412 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Danbury.

Kenneth B. BENSON et al.,
v.
TOWN OF REDDING.

No. CV020344668S.

Feb. 4, 2003.

Pullman & Comley, LLC, Bridgeport, for Town of
Redding.

WHITE, J.

**\*1** Based on the admissions of the parties, the
following facts are undisputed. The plaintiffs,
Kenneth Benson and Patricia Benson (Bensons), are
the owners of **real property** known as 27 Great
Oak Lane, Redding, Connecticut. The defendant,
town of Redding (town), owned, maintained,
possessed and controlled underground gas storage
tanks, lines and dispensers located at, on and under
28 Great Oak Lane, Redding, Connecticut (town
garage).

In November 1989, upon investigating a smell of
gasoline in the area, the town discovered that one or
more of the underground tanks at the town garage
was leaking. Upon becoming aware of this leak, the
town removed the leaking tank and installed
monitoring wells, an interceptor trench and a pump
and filtration system in the Bensons' home to
monitor and remediate possible contamination. The
town also tested the water at the Bensons' property
in December 1989, and found the MTBE level, a
gasoline constituent, to be 140 parts per billion

(ppb), the state action level being 70 ppb.

According to the town and based on the affidavit of
Doug Hartline, health officer for the town
(Hartline), the remediation continued for ten years.
The MTBE level inside the Benson home was
immediately non-detectable due to the filtration
system installed in the home, while the MTBE
levels in the Bensons' well dropped to the level of
non-detectable over the course of the ten-year
period. In September 1999, at the direction of their
environmental consultant and pursuant to
Department of Environmental Protection
procedures, the town turned off the remediation
devices to see if MTBE levels in the well would rise
again. The levels did rise and the system was turned
back on in January 2000. The filter in the Benson
home was never turned off during this test and no
contamination was found in their tap water. A
second shutoff test was scheduled for December 12,
2001.

The Bensons commenced this action on December
14, 2001, by service of process on the town's first
selectman. In their five-count complaint, the
Bensons assert causes of action against the town for
negligence, trespass to land, creation of a private
nuisance, violation of General Statutes § 22a-16 and
negligence per se. The town responded to the
complaint with an answer and four special defenses
including, *inter alia,* that the Bensons' claims are
barred by statutes of limitation, governmental
immunity for intentional acts and the municipal
exception to nuisances that are not created by the
positive acts of the municipality. The town then
filed this motion for summary judgment asserting
all five counts are barred by the applicable statutes
of limitation, the trespass claim is barred because
the town is immune from claims of intentional
misconduct and the nuisance claim is barred
because there is no evidence that the town engaged
in affirmative conduct that caused a nuisance. The
town filed a memorandum of law and an affidavit
from Hartline in support of its motion. The
plaintiffs have not submitted a memorandum or any
evidence in opposition.

**\*2** "The motion for summary judgment is designed

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                                         Page 2
**(Cite as: 2003 WL 462412 (Conn.Super.))**

to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson v. New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989). "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46] ... A material fact ... [is] a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc. v. Washington,* 258 Conn. 553, 559- 60, 783 A.2d 993 (2001). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) *Pion v. Southern New England Telephone Co.,* 44 Conn.App. 657, 663, 691 A.2d 1107 (1997). "If the affidavits and the other supporting documents [submitted in opposition to the motion] are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) *Barile v. Lenscrafters, Inc.,* 74 Conn.App. 283, 285, 811 A.2d 743 (2002). When a party files a motion for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." *Heyman Associates No. 1 v. Ins. Co. of Pennsylvania,* 231 Conn. 756, 795, 653 A.2d 122 (1995).

I

The town contends that its motion for summary judgment should be granted as to all five counts of the complaint because there are no genuine issues of material fact as to the dates in question and all the Bensons' claims are barred by the statutes of limitation found in General Statutes §§ 52-577, 52 -577c, and 52-584. "Summary judgment may be

granted where the claim is barred by the statute of limitations." *Doty v. Mucci,* 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriately granted on the grounds of the statute of limitations when, "material facts concerning the statute of limitations [are] not in dispute ..." *Burns v. Hartford Hospital,* 192 Conn. 451, 452, 472 A.2d 1257 (1984).

As to the Bensons' claims for trespass, nuisance and violation of General Statutes § 22a-16, [FN1] "[t]he three-year limitation of 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of 52-577 [FN2] and enumerated in 52-584 (for negligence) or another section." (Internal quotation marks omitted.) *Travelers Indemnity Co. v. Rubin,* 209 Conn. 437, 441, 551 A.2d 1220 (1988). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Id.,* at 159. "The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." *Collum v. Chapin,* 40 Conn .App. 449, 451, 671 A.2d 1329 (1996). Accordingly, the court grants the summary judgment as to the Bensons' claim that the town violated § 22a-16.

> FN1. As to § 22a-16 and the Bensons' negligence claims, **General Statute § 52 -577c** provides that "(b) Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered." At the time the Bensons' claims arose, and until 1998, however, the statute specifically excluded petroleum from the definition of the term "hazardous substance." *Doty v. Mucci, supra,* 238 Conn. at 806. In any case, the Bensons do not dispute that they were informed of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

injury to their property shortly after the town discovered the leak. Therefore, § 52-577c contains the most generous limitations period that could apply to their claim.

FN2. Section 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "[It] is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." (Internal quotation marks omitted.) *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC,* 69 Conn.App. 151, 158, 795 A.2d 572 (2002).

*3 In addition, however, as to the Bensons' nuisance claim, "[w]hether a nuisance is permanent or temporary is also relevant for purposes of the statute of limitations ... In nuisance actions it is important, for statute of limitations purposes, to ascertain whether the invasion or interference is permanent or continuous ... If the injury or wrong is classified as temporary, the limitation period starts to run only when the plaintiff's [property is] actually harmed, and for purposes of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent ... This rule is especially applicable if the situation involves elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative condition ... The rule is predicated upon the defendant's ability and duty to abate the existing conditions which constitute the nuisance ... The characterization of a nuisance is not necessarily dependent on whether the conduct that caused the nuisance has ceased. [T]he life of an absolute nuisance exists as long as the nuisance lasts. When one creates such a nuisance is of no moment. As long as it exists, each instant of its continuance makes its creator liable for the injuries it occasions ... Courts consider not only the permanent or temporary nature of the damages, but also the permanent or temporary nature of the causative factor, so each case must be considered in its own factual setting ... Whether contamination by toxic waste is a permanent or continuing injury is ordinarily a question of fact turning on the nature

and extent of the contamination." (Internal quotation marks omitted.) *Blackburn v. Miller-Stephenson Chemical Co.,* Superior Court, judicial district of Danbury, Docket No. CV93 0314089 (September 11, 1998, J. Leheny).

Similarly although, "[a] statute which establishes a limitations period in an action for trespass to **real property** [generally] commences running at the occurrence of the first actual damages ... [w]here a trespass is a continuing one, and not of that class of permanent appropriations to be assessed for all time at once, there may be successive actions for each continuance of the trespass ... A continuing trespass upon **real property** creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass." (Citations omitted; internal quotation marks omitted.) *Id.*

Here, the town has not presented evidence that establishes whether the conduct that forms the basis of the plaintiffs' trespass and nuisance claims was continuing or permanent in nature. Therefore genuine issues of material fact exist as to when the statutes of limitations begin to run, and summary judgment as to these causes of action on the basis of statutes of limitation is improper.

As to the Bensons' causes of action for negligence and negligence per se, "General Statutes § 52-584 is the statute of limitations applicable in an action to recover damages for injury to the person or property caused by negligence ... That statute imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered ... The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of ... The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs." (Internal quotation marks omitted.) *Johnson v. North Branford,* 64 Conn.App. 643, 648, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). [FN3]

FN3. Section 52-584 provides: "No action to recover damages for injury to the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d

(Cite as: 2003 WL 462412 (Conn.Super.))

person, or to real or personal property, caused by negligence ... shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of ..."

**\*4** It is undisputed that the town discovered contamination in November 1989. According to Hartline's affidavit the Bensons were notified of the leak immediately and contamination was found on their property on January 17, 1990. The Bensons did not commence this action until ten years after the contamination was brought to their attention and clearly outside of all three limitations periods. Moreover the Bensons' arose from a single act or omission, the leaking gasoline tank, and the facts do not suggest that the limitations period should be tolled by the continuing course of conduct doctrine. See *Blanchette v. Barrett,* 229 Conn. 256, 275, 640 A.2d 74 (1994). Accordingly, the Bensons' claims for negligence and negligence per se are barred by the statute of limitations.

## II

The town moves for summary judgment as to the Bensons' trespass to land claim on the additional grounds that this is an intentional tort and the Bensons cannot show that the town engaged in intentional conduct and General Statutes § 52-557n, abrogates governmental immunity only for negligent acts.

"The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *Abington Ltd. Partnership v. Talcott Mountain Science Center for Student Involvement, Inc.,* 43 Conn.Sup. 424, 427, 657 A.2d 732, 11 Conn. L. Rptr. 349 (1994). "[I]n order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." (Internal quotation marks omitted.) *Id.,* at 427-28.

There is no evidence that the town committed any

intentional act that caused the gasoline to leak and contaminate the Bensons' well water. Based on Hartline's affidavit and the complaint, it is undisputed that the leak was below ground and unknown to any of the parties until a smell of gasoline in a nearby stream alerted the town to the problem. Although the Bensons allege that the town acted intentionally they do not provide any evidence or even allege any facts to support this allegation. In *Coggins v. Waterbury,* Superior Court, judicial district of Waterbury, Docket No. CV 01 0163783 (July 12, 2001, Doherty, J.), the court entertained a similar action in which the plaintiff alleged that the city was negligent in the care and inspection of its sewage system and allowed sewage to leak onto the plaintiff's property. The court granted the defendant's motion to strike the trespass count because, "[t]he plaintiff does not allege any facts that the defendant acted intentionally or that it acted with the knowledge that there was a substantial certainty that sewage would enter her property."

Furthermore the doctrine of governmental immunity shields the town from this claim because General Statutes § 52-557n, only abrogates governmental immunity for negligent acts. [FN4] "[T]he general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." *Williams v. New Haven,* 243 Conn. 763, 766-67, 707 A.2d 1251 (1998). "The legislature ... set forth general principles of municipal liability and immunity in General Statutes § 52-557n." *Id.,* at 767. "Subsection 52-557n(a)(2)(A) excludes municipal liability for intentional misconduct." *Windham v. Leclair,* Superior Court, judicial district of Windham at Putnam, Docket No. CV 96 0054223 (February 25, 1999, Sferrazza, J.).

> FN4. Section 52-557n provides: "(a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; ... (2)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 2003 WL 462412 (Conn.Super.))

Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

**\*5** The motion for summary judgment is therefore granted on the Bensons' cause of action in trespass because there is no evidence of intentional conduct and the doctrine of governmental immunity shields the town from this claim.

### III

The town moves for summary judgment as to the Bensons' nuisance claim on the additional ground that a nuisance requires evidence of a condition which is continuing and the plaintiff cannot show a continuing condition. "[A] plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *Pestey v. Cushman,* 259 Conn. 345, 355, 788 A.2d 496 (2002).

As stated previously, the town has not conclusively established that a continuing nuisance did not exist. Although the Bensons allege the original contamination most likely occurred as a result of the leaking gas tank discovered in 1989, and Hartline's affidavit shows that this condition was fixed in 1990, when the leaking tank was removed from the ground, it does not necessarily follow that the nuisance ended at that point.

In the alternative, the town argues, even if a nuisance exists, the Bensons do not provide evidence that the town engaged in affirmative conduct that caused the gasoline to leak. The Bensons allege that the town was negligent in the care and maintenance of the tanks, and

municipalities are not liable for nuisance arising from mere negligent non-feasance. "[I]n order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance." *Elliott v. Waterbury,* 245 Conn. 385, 421, 715 A.2d 27 (1998).

The legislature apparently abrogated this general principle, however, in General Statutes § 52-557n(b), which provides in part; "(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: ... (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision." Accordingly, the court denies the motion for summary judgment as to nuisance.

**\*6** For the foregoing reasons, the town's motion for summary judgment is granted as to counts one, two, four and five of the Bensons' complaint and denied as to count three.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in A.2d
(Cite as: 2002 WL 31888196 (Conn.Super.))

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Leonard **ROSSICONE** et al.,
v.
TOWN OF **OLD SAYBROOK.**

No. CV000438533.

Dec. 9, 2002.

Caplan Hecht Scanlon & Mendel LLC, New Haven, for Leonard Rossicone, Nancy Rossicone and LNJS Realty.

Howd & Ludorf, Hartford and Michael Cronin Jr, Old Saybrook, for Town of Old Saybrook.

KEVIN F. BOOTH, J.

*1 On May 8, 2000, the plaintiffs, Leonard Rossicone and Mary Rossicone (collectively the Rossicones) and LNJS Realty (LNJS), filed a four-count complaint against the defendant, town of Old Saybrook. This action arises out of injuries and losses allegedly sustained as a result of the defendant causing the flooding of parcels of land owned by the plaintiffs. Specifically, it is alleged that the Rossicones and LNJS each owned separate parcels of land in the town of Old Saybrook, Connecticut and that the defendant owned a parcel of land contiguous with the Rossicone and LNJS parcels. It is alleged that on or about May 7, 1998, the defendant ordered or permitted the construction of a parking lot on its parcel and, in connection therewith, directed the dumping of several hundred cubic yards of asphalt and other materials in an area adjacent to both the Rossicone and LNJS parcels. It

is further alleged that the construction and dumping of materials was undertaken without the implementation of any surface water drainage system for the adjacent area.

Prior to the initiation of construction, the adjacent area was situated lower in grade than the plaintiffs' parcels and, as a result, allowed for surface water drainage which flowed naturally from the plaintiffs' lots over the adjacent area, providing continuous and uninterrupted drainage. As a result of the construction of the parking lot and the attendant dumping of materials on the adjacent area, the adjacent area became higher than the plaintiffs' parcels. This change in grade obstructed any drainage from the plaintiffs' parcels over the adjacent area. As a further result in the change of grade, surface water from the adjacent area began to flow onto the plaintiffs' parcels. The combined effect of obstructed drainage and incoming surface water caused uncontrolled flooding of the plaintiffs' parcels. (Plaintiff's Memorandum of Law in Support of Motion to Strike, pp. 1-3.)

Counts one and three, brought by the Rossicones and LNJS respectively, allege absolute private nuisance against the defendant. Counts two and four are brought by the Rossicones and LNJS respectively and allege trespass against the defendant. In each of the four counts the plaintiffs allege that the construction of the parking lot caused and continues to cause a nuisance affecting the peaceful enjoyment and impairing the use of their parcel due to land erosion, water accumulation, damage to landscaping and buildings, and the dangerous condition of the structures situated thereon.

On July 13, 2000, the defendant filed a revised answer and special defenses. The defendant filed six special defenses to the allegations of the complaint, two each as to counts one and three and one each as to counts two and four. As to all four counts, the defendant asserts the special defense of governmental immunity and, additionally, as to counts one and three, the defendant asserts the special defense of assumption of risk.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 2002 WL 31888196 (Conn.Super.))**

On June 20, 2002, the plaintiffs filed a motion to strike each of the defendant's special defenses, accompanied by a memorandum. On July 10, 2002, the defendant filed a memorandum in opposition to the motion to strike.

### DISCUSSION

**\*2** "The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaints ... to state a claim upon which relief can be granted. (Internal quotation marks omitted.) *Peter- Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) *Gazo v. Stamford,* 59 Conn. 245, 260, 765 A.2d 505 (2001). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co.,* 242 Conn. 375, 378, 698 A.2d 859 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Macomber v. Travelers Property and Casualty Corp.* 261 Conn. 620, 629, 804 A.2d 180 (2002). "A party wanting to contest the legal sufficiency of a special defense may do so by filing a motion to strike." *Barasso v. Rear Still Hill Road, LLC,* 64 Conn.App. 9, 13, 779 A.2d 198 (2001).

### A. Counts One and Three

Counts one and three, brought by the Rossicones and LNJS respectively, allege absolute private nuisance against the defendant. As to both counts, the defendant asserts the special defenses of governmental immunity and assumption of risk.

#### 1. Governmental Immunity

The defendant originally maintained that counts one and three were barred by the doctrine of governmental immunity pursuant to both common law and General Statutes § 52-557n. In the defendant's memorandum in opposition to the plaintiffs' motion to strike the special defenses, however, the defendant concedes that

"governmental immunity is not a proper defense to a nuisance action ." (Defendant's Memorandum in Opposition to Motion to Strike, p. 1 n. 1.)

The plaintiffs' motion to strike the defendant's special defense of governmental immunity as to counts one and three is granted.

#### 2. Assumption of Risk

The defendant originally maintained that counts one and three were barred by the doctrine of assumption of risk. At oral argument, however, the plaintiffs conceded that their motion to strike the special defense of assumption of risk must be denied.

The plaintiffs' motion to strike the defendant's special defense of assumption of risk as to counts one and three is denied.

#### 3. Counts Two and Four

Counts two and four, brought by the Rossicones and LNJS respectively, allege trespass against the defendant. As to both counts, the defendant asserts the special defense of governmental immunity.

The plaintiffs move to strike the special defense on the ground that governmental immunity is not a proper defense to a claim of trespass. The plaintiffs argue that the doctrine of governmental immunity is not a proper defense to a claim of trespass because an act of trespass constitutes an act in excess of statutory authority. (Plaintiffs' Memorandum in Support of Motion to Strike, pp. 10-11.)

**\*3** The defendant counters that governmental immunity is a proper special defense to a claim of trespass. The defendant argues that General Statutes § 52-557n expressly immunizes political subdivisions of the state from liability for damages caused by "[a]cts or omissions of any employee, officer or agent which constitute ... actual malice or willful misconduct." General Statutes § 52-557n(a)(2). The defendant further argues that "willful misconduct" is analogous to intentional misconduct and that because an action for trespass necessarily denotes an intentional act, the defendant is entitled to immunity. (Defendant's Memorandum, pp. 2-3.)

The essential elements of a trespass action are: "(1)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ownership or possessory interest in the land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *Abington, Ltd. Partnership v. Talcott Mountain Science Center,* 43 Conn.Sup. 424, 427, 657 A.2d 732 (1994), 11 Conn. L. Rptr. 349, quoting *Avery v. Spicer,* 90 Conn. 576, 579, 98 A.2d 135 (1916). "[A] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty ... In order that there may be a trespass ... [i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter [on the property]." (Internal quotation marks omitted.) *Coggins v. Waterbury,* Superior Court, judicial district of Waterbury, Docket No. CV010163783 (July 12, 2001) (Doherty, J.).

"[W]here ... the plan of construction [adopted] is such as necessarily results in a nuisance to abutting property owners, or is so obviously inadequate as necessarily to result in a direct trespass upon their property, the municipality cannot claim immunity, since such a result would constitute an appropriation of property without compensation." (Internal quotation marks omitted.) *Peterson v. Oxford,* 189 Conn. 740, 748-49, 459 A.2d 100 (1983), quoting *Spitzer v. Waterbury,* 113 Conn. 84, 89, 154 A.2d 157 (1931).

The plaintiffs' motion to strike the special defense of governmental immunity as to counts two and four is granted.

## CONCLUSION

The plaintiffs' motion to strike is: (1) denied as to the defense of assumption of risk asserted with respect to counts one and three; (2) granted as to the defense of governmental immunity asserted with respect to counts one and three; and (3) granted as to the defense of governmental immunity asserted with respect to counts two and four.

2002 WL 31888196 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## Westlaw.

Not Reported in A.2d
32 Conn. L. Rptr. 232
**(Cite as: 2002 WL 1293918 (Conn.Super.))**

Page 1

**C**
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Quinto **GIUNTA** et al.,
v.
TOWN OF **WESTPORT**.

**No. CV980167626.**

May 16, 2002.

WILLIAM B. LEWIS, Judge T.R.

*1 The original plaintiffs in this case were Quinto Giunta, the owner of premises located at 6 Vani Court, Westport, his son, Richard Giunta and Richard's wife, Karen Giunta, and their twin sons, Christopher and Michael, nine years old, all of whom reside at 6 Vani Court. During the pendency of this action, Quinto Giunta died, and his son continues to pursue the case in his individual capacity, but also as the executor of the estate of Quinto Giunta, deceased. The defendant is the town of Westport and its commissioner of public works, but the case was subsequently withdrawn as to the commissioner. The case involves odors allegedly emanating from the town's sewage treatment plant.

The plaintiffs have filed a "fourth revised complaint" dated October 9, 2001, which contains nine counts, including a claim for injunctive relief. The defendant has filed a motion (# 143) to strike all nine counts. Each of the challenged counts will be analyzed in turn to decide whether they should be stricken.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaints ... to state a claim upon which relief can be granted." (Internal quotation marks omitted.)

*Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.,* 240 Conn. 576, 580, 693 A.2d 293 (1997). "The role of the trial court [is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co.,* 242 Conn. 375, 378, 698 A.2d 859 (1997).

*First Count--Private Nuisance*

The plaintiffs allege that Richard Giunta now owns the subject premises and that his wife and children also reside therein; that for a great number of years they "have been forced to endure intermittent, yet persistent, obnoxious odors, mostly that of raw sewage sufficient to warrant a gag response" from the municipal sewer plant located about a mile away from their home; that the defendant knew of this condition and the effect on the plaintiffs; that there were "continually unfulfilled promises of corrective action, continually and repeated missed deadlines, unrealized proposals and non-utilization of appropriated funds to correct the problem"; that the plaintiffs have been deprived of the right to use and enjoy their property in a variety of ways; that in 1993, the Connecticut Department of Environmental Protection (DEP) filed a notice that the sewer plan as operated by the defendant violated Section 22a-174-23(a)(1) of the Regulations of Connecticut State Agencies; [FN1] and that in 1998, the DEP issued an order to the defendant that problems with the sewer plant be rectified, but that the defendant had not complied with this order in any significant way and the plaintiffs continue to suffer damages as a result.

FN1. The order from the DEP stated in pertinent part that: "[b]ased on the criteria set forth in Section 22a-174-23(a)(2)(b) of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                  Page 2
32 Conn. L. Rptr. 232
(Cite as: 2002 WL 1293918 (Conn.Super.))

the Regulations of Connecticut State Agencies, this odor was determined to unreasonably interfere with the enjoyment of life and the use of property, thereby constituting a nuisance." This section of the regulation provides in pertinent part that:

(a)(1) No person shall cause or permit the emission of any substance or combination of substances which creates or contributes to an odor, in the ambient air, that constitutes a nuisance; (2) An odor constitutes a nuisance if present with such intensity, characteristics, frequency and duration that: (A) It is, or can reasonably be expected to be, injurious to public health or welfare, or (B) It unreasonably interferes with the enjoyment of life or the use of property, considering the character and degree of injury to, or interference with, the health, general welfare, property, or use of property of the people affected, and the location of the pollution source and character of the area or neighborhood affected. Whether the source of the emissions was present in the location first shall not be a consideration. (3) Except as provided in subsection (b) of this section, in determining whether an odor constitutes a nuisance the commissioner shall review information gathered from any source of information, including but not limited to citizen complaints and site inspections or surveys.

*2 In seeking to strike the first count, the defendant argues that: (1) Richard Giunta is the sole owner of the subject premises, not his wife and children, and that the first count claiming nuisance may be pursued only by an owner of property; (2) a municipality such as the defendant may be liable only when it creates a nuisance, and that mere nonfeasance does not set forth a proper cause of action; and (3) it is immune from liability because the operation of a sewer plant involves a discretionary governmental activity, not a ministerial function.

The subject of what constitutes a common law cause of action in private nuisance was discussed at some length in the recent case of *Pestey v. Cushman,*

259 Conn. 345, 788 A.2d 496 (2002), where our Supreme Court ruled: "On the basis of our reexamination of our case law and upon our review of private nuisance law as described by the leading authorities, we adopt the basic principles of § 822 of the Restatement (Second) of Torts and conclude that in order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional ... if the defendant intends the act that brings about a condition found to be nuisance; or the result of the defendant's negligence. Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable." (Internal citations omitted.) *Id.,* at 360-61. Regarding the question of whether the interference is unreasonable, the Supreme Court wrote that: "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." *Id.* at 362. This case refers to the use and enjoyment of one's property. All the plaintiffs reside at 6 Vani Court, and they allege that the use and enjoyment of their home have been adversely affected by the defendant's conduct, thus affording them the right to pursue this action as plaintiffs.

*3 Contrary to the claim of the defendant municipality, *Hillman v. Greenwich,* 217 Conn. 520, 528, 587 A.2d 99 (1991), indicates that an action for "private nuisance" may lie against a municipality. Moreover, General Statutes §

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                 Page 3
32 Conn. L. Rptr. 232
**(Cite as: 2002 WL 1293918 (Conn.Super.))**

52-557n(b)(8) and (9) render a town such as the defendant liable for municipal properties and pollution of the environment. [FN2] Thus, governmental immunity is not applicable under these facts.

> FN2. General Statutes § 52-557n(b)(8) provides in pertinent part that a municipality may be liable for damages for the "failure to make an inspection or making an inadequate or negligent inspection of ... property owned ... by such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety ..." Subsection (9) provides in pertinent part that a town may be liable for the "failure to detect or prevent pollution of the environment ..."

In summary, measuring the allegations in the first count against the essential elements of a cause of action for private nuisance, this court finds that the allegations are sufficient. Accordingly, the motion to strike the first count is denied.

### Second Count--Negligence

The plaintiffs have alleged that the defendant owes them a duty of "reasonable care" to prevent them from damage or harm; that by operating the sewer plant in the manner it did, despite the DEP's order, the defendant has violated the duty of due care owed them; and that the plaintiffs have been damaged as a result. The defendant's motion to strike is premised on the claim that its operation of the sewage treatment plant was a discretionary governmental function with respect to which a municipality is immune from liability.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Maffucci v. Royal Park Ltd. Partnership,* 243 Conn. 552, 566, 707 A.2d 15 (1998). "Recovery of damages in negligence requires proof by a fair preponderance of the evidence that the actor owed a duty of care to the victim, which was breached by the actor's failure to meet the standard of care arising therefrom and that

the breach was the proximate cause of actual harm suffered by the victim." *Coburn v.. Lenox Homes, Inc.,* 186 Conn. 370, 372, 441 A.2d 620 (1982).

The plaintiffs have adequately pled a cause of action claiming negligence on the part of the defendant municipality. The claim of governmental immunity does not require the granting of the motion to strike this count for the same reasons set forth in the discussion of the first count of common-law private nuisance. The motion to strike the second count is denied.

### Third Count--Recklessness

At common law, the insertion of the word "reckless" or "recklessness" in a count otherwise stating a claim for negligence is insufficient to state a claim of recklessness. "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on ... Simply using the word 'reckless' or 'recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." (Internal quotation marks omitted.) *Dumond v. Denehy,* 145 Conn. 88, 91, 139 A.2d 58 (1958).

*4 In count three, the plaintiffs re-allege the allegations of negligence, but add new allegations that the defendant's "failure to adequately address, investigate and remediate the odor problem for such an extended time after the inordinate number of complaints ... constituted and continues to constitute reckless and wanton misconduct."

The plaintiffs in this case have properly alleged the existence of a cause of action for recklessness because they did not simply repeat the allegations of negligence and give them a new label but, to the contrary, made additional allegations referring to reckless and wanton misconduct. The motion to strike the third count is denied.

### Fourth Count--Breach of Statutory Duty under General Statutes § 22a-184

The plaintiffs have alleged that the defendant's conduct as outlined in the previous counts constitutes a breach of its obligations to them under

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
32 Conn. L. Rptr. 232
(Cite as: 2002 WL 1293918 (Conn.Super.))

Page 4

General Statutes § 22a-184, which prohibits polluting the air. [FN3] The plaintiffs further allege that the defendant's failure to rectify the odor problem at the sewer plant has caused them to be damaged and harmed.

> FN3. General Statutes § 22a-184 provides in pertinent part that: "No person shall cause air pollution in violation of any provisions of this chapter or Section 14-164c or of the regulations adopted hereunder; no person shall construct, install, enlarge, or establish a new air contaminant source specified in regulations adopted by the commissioner without a permit issued by the commissioner, or in violation of an order of said commissioner. The commissioner may request the Attorney General to institute an action in the superior court for the judicial district of Hartford for injunctive relief to restrain any violation of this section."

The defendant claims that this statute does not afford the plaintiffs a private cause of action. The motion to strike this count is granted because the statute itself states explicitly that its enforcement is a function of the Attorney General of this state, and the plaintiffs have not cited any authority to the contrary.

*Fifth Count--Trespass*

The defendant next argues that the plaintiffs have failed to sufficiently allege a cause of action for trespass. The essential elements of a trespass action are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *Abington Ltd. Partnership v. Talcott Mountain,* 43 Conn.Sup. 424, 427, 657 A.2d 732 (1994). "[A] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty ... In order that there may be a trespass ... [i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter [on the property]." (Citations omitted; internal

quotation marks omitted.) *Mather v. Birken Manufacturing Co.,* Superior Court, judicial district of Hartford at Hartford, Docket No. 564862 (December 8, 1998, Hennessy, J.) (23 Conn. L. Rptr. 443); *Ahnert v.. Getty,* Superior Court, judicial district of New London at New London, Docket No. 537008 (April 4, 1997, Handy, J.).

In this count, the plaintiffs have alleged that the defendant's conduct in failing to cure the odor problems at the sewer plant constitutes a trespass because the "intolerable odors ... invade the Plaintiffs' Property." Thus, a cause of action in trespass has been adequately set forth for the purposes of withstanding a motion to strike.

*5 Again, the defendant has urged that it is entitled to governmental immunity as a second ground to strike this count. However, the doctrine of governmental immunity does not apply. In *Krozser v. New Haven,* 212 Conn. 415, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990), our Supreme Court stated the following: "[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority ... In addition, the state cannot use sovereign immunity as a defense in an action for ... injunctive relief." *Id.,* at 421. "We have excepted ... injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment." (Citations omitted; internal quotation marks omitted.) *Pamela B. v. Ment,* 244 Conn. 296, 330, 709 A.2d 1089 (1998). Although framed in terms of sovereign immunity of the state, the same reasoning applies to governmental immunity of a municipality.

Furthermore, the Supreme Court noted that "[w]here ... [the activity] is such as necessarily results in a nuisance to abutting property owners, or is so obviously inadequate as necessarily to result in a direct trespass upon their property, the municipality cannot claim immunity, since such a result would constitute an appropriation of property without compensation." *Peterson v. Oxford,* 189 Conn. 740, 748, 459 A.2d 100 (1983).

The complaint has sufficiently set forth a cause of action for trespass and governmental immunity is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
32 Conn. L. Rptr. 232
(Cite as: 2002 WL 1293918 (Conn.Super.))

inapplicable. The motion to strike the fifth count is denied.

### Sixth Count--Intentional Infliction of Emotional Distress

The plaintiffs have alleged that the defendant's conduct was "reckless, wilful, wanton," and an "extreme and outrageous departure from ordinary care" which resulted in their sustaining severe emotional distress, including "the enjoyment and well being of the minor children." The defendant claims that these allegations are insufficient to state a claim upon which relief may be granted and that it is entitled to governmental immunity.

In order to prevail on a claim for intentional infliction of emotional distress against the defendant, the plaintiff must allege four elements: "(1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Education of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000).

In this case, the plaintiffs have sufficiently alleged all four elements of intentional infliction of emotional distress necessary to withstand a motion to strike. The plaintiffs do not merely assert legal conclusions not supported by any facts, as claimed by the defendant, but rather they made specific factual allegations required to state a claim upon which relief can be granted. Accordingly, the motion to strike this count is denied.

### Seventh Count--Negligent Infliction of Emotional Distress

\*6 The plaintiffs have alleged in this count that the defendant breached its common law duty of reasonable care and its statutory duty under the environmental laws, as a result of which the plaintiffs claim to have suffered "severe, emotional distress" as well as "extreme anxiety."

The defendant contends that the plaintiffs are merely setting forth conclusions and not facts. The defendant also claims it is immune from liability because of its status as a municipality.

As explained by our Supreme Court in *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88-89, 700 A.2d 655 (1997), in order to prevail on a claim for negligent infliction of emotional distress, the plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm ..."

The motion to strike the seventh count is denied because the plaintiffs have sufficiently set forth a cause of action for negligent infliction of emotional distress.

### Eighth Count--Injunction

The plaintiffs seek a mandatory injunction in the eighth count ordering the defendant municipality to take immediate steps and repairs "to remediate the odor problem pending the equally necessary, permanent corrections."

The defendant argues that the plaintiffs have not adequately indicated that they are suffering irreparable harm. The town also claims that the DEP has exclusive jurisdiction over this controversy and this court would be "usurp(ing) the expertise and authority of the DEP" were it to get involved in this case. This claim could have been asserted in a motion to dismiss for lack of subject matter jurisdiction but was not.

In terms of the plaintiffs' application for an injunction, it is well established that a party seeking a permanent injunction "has the burden of proving irreparable harm and lack of an adequate remedy at law ... The request for injunctive relief is addressed to the sound discretion of the trial court ... In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction ..." (Citations omitted; internal quotation marks omitted.) *Tomasso Brothers, Inc. v. October Twenty-Four, Inc.,* 230 Conn. 641, 648, 646 A.2d 133 (1994). "A decision to grant or deny an injunction must be compatible with the equities in the case." *Moore v. Serafin,* 163 Conn. 1, 6, 301 A .2d 238 (1972).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
32 Conn. L. Rptr. 232
**(Cite as: 2002 WL 1293918 (Conn.Super.))**

Page 6

The plaintiffs have set forth a cause of action for an injunction by alleging that they "have no adequate remedy at law to force the immediate remedies available to obviate the obnoxious odors during the extensive and time consuming permanent remediation," or "to have the Defendant promptly and adequately remedy the defects at the Plant which are causing the release of obnoxious odors." If the plaintiffs prove one or more counts of their complaint, they should have available an injunction as a possible remedy. Accordingly, the motion to strike the eighth count is denied.

*Ninth Count--Unconstitutional Taking of Property*

**\*7** In this count, the plaintiffs allege that the defendant has taken their property without paying just compensation as required by the Connecticut constitution because the defendant has "substantially interfered" with the plaintiffs' "right to the use and enjoyment of their lives and property to a substantial degree." The defendant claims that the plaintiffs' property has not been "taken," because it is still being used as a residential dwelling and has not been rendered useless."

"We begin our analysis of this claim by setting forth the general, well established principles that govern the taking of real property by eminent domain. The fifth amendment to the United States constitution, as applied to the states through the due process clause of the fourteenth amendment ... provides that 'private property [shall not] be taken for public use, without just compensation.' U.S. Const., amend. V. Article first, § 11, of the Connecticut constitution similarly provides that '[t]he property of no person shall be taken for public use, without just compensation therefor.' " (Citations omitted; internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc. v. ATC Partnership,* 256 Conn. 813, 827-28, 776 A.2d 1068 (2001).

The plaintiffs have adequately pled a cause of action for the taking of property without compensation under the federal and state constitutions. See *Spitzer v. Waterbury,* 113 Conn. 84, 89, 154 A. 157 (1931) (referring to trespass on one's property by reason of municipal activities). "[S]uch a result would constitute an appropriation of property without compensation." *Peterson v. Oxford, supra,* 189 Conn. at 749.

In summary, the defendant's motion to strike is granted as to the fourth count, but is denied as to all of the other counts of the plaintiffs' complaint.

So Ordered.

2002 WL 1293918 (Conn.Super.), 32 Conn. L. Rptr. 232

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in A.2d
34 Conn. L. Rptr. 243
**(Cite as: 2003 WL 1477036 (Conn.Super.))**

Page 1

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Stamford-Norwalk.

Nicholas CARTSOUNIS,
v.
C. Cory ROSENSTEIN, et al.

**No. CV000176589.**

March 6, 2003.

Berkowitz, Malowitz & Mullin, Stamford, for
Nicholas Cartsounis.

Bai, Pollock, Blueweiss & Mulcahey, PC,
Bridgeport, for C. Cory Rosenstein and
Neurological Surgeons of Stamford, PC.

Ryan, Ryan, Johnson & DeLuca, LLP, Stamford,
for Stamford Health Systems, Inc. and Stamford
Hospital.

WILLIAM B. LEWIS, Judge.

*1 Before the court is the **defendants'** motion for
summary judgment on the first count of the
plaintiff's complaint on the ground that the **statute
of limitations expired** and the action is untimely.
The motion is denied because the **defendants,** as
the moving parties, fail to show that the material
facts are undisputed and that they are entitled to
judgment as a matter of law.

On February 14, 2000, the plaintiff, Nicholas
Cartsounis, filed a two-count medical malpractice
action against the defendants, C. Cory Rosenstein,
M.D., Neurological Surgeons of Stamford, P.C.
(Neurological Surgeons) and Stamford Health
Systems, Inc. (Stamford Hospital). Prior to filing
the complaint, the plaintiff petitioned the court for

an automatic ninety-day extension of the applicable
statute of limitations, pursuant to General Statutes §
52- 190a(b). [FN1] On September 17, 1999, the
clerk granted the plaintiff's petition.

> FN1. General Statutes § 52-190a(b)
> provides: "Upon petition to the clerk of the
> court where the action will be filed, an
> automatic ninety-day extension of the
> statute of limitations shall be granted to
> allow the reasonable inquiry required by
> subsection (a) of this section. This period
> shall be in addition to other tolling
> periods."

In count one of the complaint, directed against
Rosenstein and Neurological Surgeons, the plaintiff
alleges that in September 1997, he became a patient
of Rosenstein, a physician specializing in the field
of neurosurgery, and that during this time,
Rosenstein held himself out to the public
individually and as a corporation known as
Neurological Surgeons of Stamford, P.C. According
to the complaint, on October 10, 1997, Rosenstein
admitted the plaintiff to Stamford Hospital where,
on October 15, 1997, Rosenstein negligently
performed a right carotid endarterectomy upon him.
The plaintiff alleges that Rosenstein continued to
provide him with negligent treatment until he was
discharged from the hospital on November 7, 1997.
The plaintiff further alleges that as a result of
Rosenstein's negligence, he has suffered and will
continue to suffer pain and injuries; that he is
permanently disabled and will require on-going
physical therapy and long-term care in a skilled
nursing facility; and that he has incurred and
continues to incur expenses for medical care and
treatment. [FN2]

> FN2. In count two of the complaint, the
> plaintiff alleges a cause of action for
> negligence against Stamford Hospital. This
> count is not at issue here.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                Page 2
34 Conn. L. Rptr. 243
**(Cite as: 2003 WL 1477036 (Conn.Super.))**

According to the marshal's return, on February 9, 2000, deputy sheriff Anthony D. Verrico (marshal) served the defendants, in hand, the writ, summons and complaint. The marshal's return does not indicate the date on which the plaintiff delivered process to the marshal. Rosenstein and Neurological Surgeons (the defendants) filed an answer denying the material allegations in the complaint and have raised the special defense that the action is barred by the statute of limitations in General Statutes § 52-584. The plaintiff filed a reply in which he generally denied the defendants' special defense.

On October 8, 2002, the defendants moved for summary judgment (# 132) on the ground that the action is barred by the two-year statute of limitations under General Statutes § 52-584. [FN3] The plaintiff has filed an opposition memo in which he asserts that the action was timely commenced pursuant to General Statutes § 52-593a.

> FN3. The matter is set for a trial on May 19, 2003. On September 9, 2002, the court (D'Andrea, J.) granted the defendant's request for permission to file a motion for summary judgment.

"Summary judgment may be granted where the claim is barred by the **statute of limitations**"; *Doty v. Mucci,* 238 Conn. 800, 806, 679 A.2d 945 (1996) ; and "material facts concerning the **statute of limitations** [are] not in dispute ..." *Burns v. Hartford Hospital,* 192 Conn. 451, 452, 472 A.2d 1257 (1984). "[T]he party seeking summary judgment has the **burden** of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Gaynor v. Payne,* 261 Conn. 585, 590-91, 803 A.2d 311 (2002). "In deciding a motion for summary judgment, the trial court must view the **evidence** in the light most favorable to the nonmoving party ..." (Internal quotation marks omitted.) *Appleton v. Board of Education,* 254 Conn. 205, 209, 757 A.2d 1059 (2000).

\*2 In support of their motion for summary judgment, the **defendants** argue that according to the plaintiff, Rosenstein provided him with continuous care and treatment until November 7, 1997, and therefore, pursuant to General **Statutes** § 52-584, the plaintiff had until November 7, 1999, to commence his action. The **defendants** acknowledge that on September 17, 1999, the court granted the plaintiff a ninety-day extension pursuant to General **Statutes** § 52-190a(b) thereby changing the **expiration** date to February 7, 2000. Because the marshal did not serve process until February 9, 2000, the **defendants** maintain that the action is untimely. The **defendants** further argue that the plaintiff cannot rely on General **Statutes** § 52-593a to save the action because the marshal's original return of service does not comply with the **statute's** requirement. To support their argument, the **defendants** submitted as **evidence** the marshal's return of service dated February 9, 2000.

In opposition to summary judgment, the plaintiff argues that a genuine issue of material fact exists regarding the date on which he discovered or in the exercise of reasonable care should have discovered his injury, and thus when the statute of limitations began to run. In the alternative, the plaintiff contends that he filed an amended return of service that complies with § 52- 593a and can rely on the statute.

General Statutes § 52-584 provides in relevant part that "[n]o action to recover damages for injury to the person ... caused by malpractice of a physician, surgeon [or] hospital ... shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of ..." To establish a right to summary judgment pursuant to § 52-584 in a medical malpractice action, it is the movant's burden to clearly show, through affidavit(s) or other documents, when the plaintiff's action accrued. *Catz v. Rubenstein,* 201 Conn. 39, 513 A.2d 98 (1986). An action for medical malpractice accrues "when [the plaintiff] discovered or in the exercise of reasonable care should have discovered that she had suffered some form of 'actionable harm.' " *Id.,* at 48. Actionable harm occurs when the plaintiff "discovered or in the exercise of reasonable care

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
34 Conn. L. Rptr. 243
(Cite as: 2003 WL 1477036 (Conn.Super.))

should have discovered a causal relationship between the defendant's alleged [negligence]" and the plaintiff's injury. *Id.,* at 44.

As the moving parties in the present case, the **defendants** have the **burden** of producing **evidence** that shows that this action is untimely. Thus, the **defendants** must prove through affidavits or other documents that, assuming that the two-year **statute** of **limitations** applies here, the action was commenced more than two years and ninety days after the plaintiff discovered or in the exercise of reasonable care should have discovered a causal relationship between the **defendants'** alleged negligent conduct and the plaintiff's injury.

**\*3** The **defendants** have not met this **burden**. Indeed, their only **evidence** is the marshal's return, which indicates only the date on which process was served. Because the plaintiff disputes that the action **expired** February 7, 2000, **evidence** indicating the date on which the action actually accrued is particularly important here. Evaluating these facts in the light most favorable to the nonmoving party, this court finds that the **defendants** have not met the **burden** of showing that the plaintiff's action is untimely.

Even if the **defendants** had provided sufficient **evidence** on which the court could conclude that the cause of action accrued on November 7, 1997, summary judgment should still be denied because the action was timely commenced under § 52-593a.

Section 52-593a(a) provides in relevant part, "a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal authorized to serve the process and the process is served, as provided by law, within fifteen days of the delivery." Section 52-593a(b), which is read in conjunction with § 52-593a(a), states that "the officer making service shall endorse under oath on such officer's return the *date of delivery of the process to such officer* for service in accordance with this section." (Emphasis added.) The defendants contend that because the marshal failed to comply with § 52-593a(b), neither the defendants nor the court can know whether the marshal served the defendants with process within fifteen days of the date it was delivered to him, as required by §

52- 593a(a).

The plaintiff argues that the requirement that the marshal include this information on the face of the return is instructional and not mandatory and that he has cured this defect by filing an amended return. The plaintiff has submitted as evidence the amended return of service filed on October 18, 2002, on which the marshal states that the writ, summons and complaint were personally delivered to him on February 4, 2000, and that he served the defendants with process on February 9, 2002. The plaintiff has also submitted a certified affidavit signed by the marshal in which the marshal attests that on February 4, 2000, he personally appeared at the plaintiff's attorney's office and received the complaint in the present matter, and that on February 9, 2000, he served process upon the defendants.

When determining the date a civil action has commenced, the Supreme Court "has long held that an action is brought once the writ, summons and complaint have been served upon a defendant." *Rana v. Ritacco,* 236 Conn. 330, 337, 672 A.2d 946 (1996). "An exception to this rule, however, may be found in General Statutes § 52-593a(a) ..." *Stingone v. Elephant's Trunk Flea Market,* 53 Conn.App. 725, 729-30, 732 A.2d 200 (1999). Section § 52-593a(a) is a savings statute which "becomes operative only where the process has been delivered before the running of the statute of limitations ... the serving officer ... attest[ed] to the date of delivery ... and the process is served within fifteen days of the date of delivery." (Internal quotation marks omitted.) *Neligon v. Port Associates,* Superior Court, judicial district of New Haven at Meriden, Docket No. CV 00 0273345 (October 12, 2001, Gilardi, J.).

**\*4** "Courts have reached different conclusions regarding compliance with subsection (b) of § 52-593a. Some courts have held that strict compliance with [the endorsement requirement under § 52-593a(b) ] is necessary to avail oneself of [§ 52-593a(a) ] ..." *Hornyak v. St. Pierre,* Superior Court, judicial district of Waterbury, Docket No. CV 960131012 (August. 1, 2000, Wiese, J.) (27 Conn. L. Rptr. 716, 717); see, e.g., *Cazimovski v. Retro Clubs, Inc.,* Superior Court, judicial district of Waterbury, Docket No. CV 96 130900 (May 28, 1996, Pellegrino, J.) (§ 52-593a unavailable to save

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
34 Conn. L. Rptr. 243
**(Cite as: 2003 WL 1477036 (Conn.Super.))**

action because marshal failed to indicate in return, date on which he received service). In the majority of cases, however, courts "have recognized that the savings provisions of General Statutes § 52-593a should be liberally construed because of the statute's remedial purpose." *Martidis v. Lombard Realty,* Superior Court, judicial district of Waterbury, Docket No. CV 97 0142374 (July 30, 1998, Pellegrino, J.) (22 Conn. L. Rptr. 534, 535). These courts have held that "the statute does not mandate the written endorsement of the date of delivery of process on the original return, that failure to [comply with § 52-593a(b) ] is amendable," by affidavit or via an amended return. *Holness v. Gray,* Superior Court, judicial district of Hartford, Docket No. 01 0805850 (April 17, 2002, Wagner, J.) (32 Conn. L. Rptr. 109, 110); see, e.g., *Thomas v. Nicola,* Superior Court, judicial district of New London, Docket No. CV 92 524494 (May 6, 1994, Austin, J.) (court held action saved under § 52-593a because compliance with § 52-593a(b) achieved by affidavits or amended return); *Allen v. Chelednik,* Superior Court, judicial district of Danbury, Docket No. CV95 0321475 (August 16, 1996, Moraghan, J.) (17 Conn. L. Rptr. 427, 428) (court held action saved under § 52-593a because marshal's affidavit indicated he received process before **statute of limitations expired**). This court agrees with the reasoning of the latter line of cases.

The purpose of § 52-593a is to save an action which is otherwise barred because process was completed after the **statute of limitations expired**. See *Zarillo v. Peck,* 33 Conn.Sup. 676, 366 A.2 1165, *cert. denied,* 171 Conn. 731, 357 A.2d 515 (1976). A court should not "elevate form over substance by analyzing a **statute** on the basis of its structure rather than its purpose." *Reichert v. Sheridan,* 34 Conn.App. 521, 525, 642 A.2d 51 (1994), aff'd, 233 Conn. 251, 658 A.2d 96 (1995). Moreover, our Supreme Court has long held that "any ... return of process is amendable, and, if an error has intervened, ought to be amended and made to speak the exact truth." *Palmer v. Thayer,* 28 Conn. 237, 243 (1859). "[Absent] a showing of prejudice or that [a marshal's] amended return [or affidavit] is inaccurate," the court has the discretion to consider said documents when determining whether an action is saved under § 52-593a. *Robel v. Nassir,* Superior Court, judicial district of New Haven, Docket No. SPNH 98 04 54492 (May 8, 1998, Levin, J.).

**\*5** In the present action, the plaintiff has provided evidence that the present action falls within the purview of General Statutes § 52-593a. As the plaintiff filed an amended return of service that complies with the statute, the action is not lost because the marshal's original return did not state the date on which process was delivered to him. Viewing the evidence in the light most favorable to the nonmoving party, this court finds that the action was timely commenced. Therefore, the defendant's motion for summary judgment is denied.

So Ordered.

2003 WL 1477036 (Conn.Super.), 34 Conn. L. Rptr. 243

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works